[Civ. No. 33093.   Second Dist., Div. Five.   Oct. 9, 1969.]

CHARLES M. GENSER et al., Plaintiffs and Appellants, v. CARL C. McELVY, as State Architect, et al., Defendants and Respondents.

Hill, Farrer & Burrill, Stanley E. Tobin, Kyle D. Brown, Jack R. White and William M. Bitting for Plaintiffs and Appellants.

Thomas C. Lynch, Attorney General, Sanford N. Gruskin and Bruce Wm. Dodds, Deputy Attorneys General, Herbert L. Ashby, County Counsel, and Dorothy L. Schechter, Assistant County Counsel, for Defendants and Respondents.

Eugene Miller and C. Eugene Givens as Amici Curiae on behalf of Respondents.

CHANTRY, J. pro tem.*—The Simi Valley Unified School District entered into a contract for the construction of Simi Valley High School No. 2. The contract specified that all drain, waste, vent pipes and fittings, and other plumbing facilities installed be of metal or its equivalent. Construction began in December 1966. In January 1967, petitioners discovered that plastic pipe was being installed in the drain, waste, and vent systems in place of metal pipe. They met with the State Architect[1] in February and March 1967 to protest the use of plastic pipe.

On April 17, 1967, the State Architect approved "Change Order No. 3," which provided for the substitution of plastic pipe for metal pipe in certain facets of the constuction of the high school. On April 21, 1967, petitioners wrote the State Architect stating that if he would not reconsider his position,

---

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.

[1] Education Code sections 15451-15465, commonly known as the Field Act, vest certain powers and responsibilities over school building construction in the Department of General Service. These powers and responsibilities have been delegated by the Director of the General Services Department to the State Architect. The State Architect must approve or disapprove all plans and specifications for school building construction and any changes in the plans and specifications.

they would proceed "with whatever legal action we determine appropriate in the premises." On July 3, 1967, petitioners filed their original petiton for a writ of mandate against the State Architect, seeking an order compelling him to revoke the change order. By July 20, 1967, the installation of all the plastic pipe covered by the change order was completed and fully enclosed by walls, ceilings, and concrete floors.

On August 8, 1967, petitioners filed an amended petition, joining the school district and others as respondents. The amended petition alleges that Change Order No. 3 violates the Education Code by permitting the use of unsafe, hazardous and otherwise inferior materials; that in authorizing the change the State Architect failed to exercise his jurisdictional responsibility under the law and misconstrued and too narrowly defined his regulatory powers, and that approval of the order was in derogation of his duties and violative of the provisions of the Education Code and therefore null and void.

The trial court found that the State Architect had proceeded in the manner required by law and performed his duties under the Field Act and the regulations pertinent thereto; that he had considered material presented in support of and against the use of plastic pipe in making his determination; that the approval is supported by substantial evidence; that there was no prejudicial abuse of discretion; and that the approval was not wrongful, arbitrary, or capricious. It found that the petitioners had objected to the change to plastic pipe and that such objections were timely noted. It also found that all the plastic pipe work specified in the change order was completed on July 20, 1967, and that the cost of materials and labor involved was $50,890, of which sum 90 percent had been paid to the contractor.

The court concluded that the proceedings had become moot by reason of the completion of the installation of all the plastic pipe specified in the order. It therefore denied the writ.

We agree with the trial court's ruling that the proceedings had become moot, and we affirm its judgment denying the writ. Although mandamus is generally classed as a legal remedy, the question of whether it should be applied is largely controlled by equitable considerations. (*Dowell* v. *Superior Court* (1956) 47 Cal.2d 483 [304 P.2d 1009].) [3] "It is the invariable rule that a court of equity will refuse to issue a writ of mandamus when it is useless, unenforceable or unavailing." (*Zagoren* v. *Hall* (1932) 122 Cal.App. 460, 462 [10 P.2d 202].) For example, in *Crangle* v. *City Council of*

*Crescent City* (1933) 219 Cal. 239, 240 [26 P.2d 24], an appeal from denial of a writ to require the council to annul a contract for an improvement was dismissed as moot where the contract had been completed and bonds sold to third persons. The court stated: ''No injunction was issued nor applied for to restrain said city or said company from proceeding under said resolution and award to perform said work and improvement.''

Thus, in our case it is clear that the writ, if issued by the trial court, would have been totally ineffectual to accomplish the purported purpose of preventing the installation of the plastic pipe. It is not disputed that the pipe was installed and encased in walls and floors by July 20, 1967. The school district was not joined as an indispensable party until August 8, 1967, and the hearing did not take place until September 6 and 7, 1967.

Petitioners contend that the mootness rule should not be applied in this case for two reasons. First, they contend the rule does not apply when the matter becomes moot through the fault of the defendant, and the defendant proceeds at his own risk when his actions are questioned. Petitioners rely on three cases: *Feder* v. *Lahanier* (1962) 200 Cal.App.2d 483 [19 Cal.Rptr. 638] ; *Gogerty* v. *Coachella Valley Jr. College Dist.* (1962) 57 Cal.2d 727 [21 Cal.Rptr. 806, 371 P.2d 582] ; and *Smith* v. *North* (1966) 244 Cal.App.2d 245 [53 Cal.Rptr. 94].

In *Feder* the appeal was dismissed for mootness. The petition had sought to require a change in the civil service eligibility list which, under regulations, would expire in two years. This period had expired at the time of the motion. Although *Feder* follows the general rule, petitioners' reliance on the decision is based solely upon the *underlined* portion of the following statement: '' ' ''It necessarily follows that when, pending an appeal from the judgment of the lower court, *and without any fault of the defendant,* an event occurs which renders it impossible for this court, if it should decide the case in favor of plaintiff, to grant him any effectual relief whatever, the court will not proceed to a formal judgment, but will dismiss the appeal.'' ' '' It will be observed no question of anyone's fault was in any way involved in the case, as the list simply expired by lapse of the period specified in the regulations.

In *Gogerty*, the petition alleged the school district had *fraudulently* selected a school site and had done so *notwith-*

*standing an adverse report* of the Department of Education disapproving the site. The Department of Education sought to enjoin the purchase and development of the site. The school district moved for a dismissal of the appeal as moot on the ground it had already purchased the site and had spent considerable money developing it. The Supreme Court states, in refusing to dismiss: ''In the present case defendant district was aware from October 1959, and at all stages thereafter, that plaintiff was questioning its right to proceed with the construction and that the matter would have to be decided by the courts.

''Therefore, it is not in a position at this late date to complain of an injury which it brought upon itself when it proceeded at its own peril to continue the construction of buildings upon the site before the courts had finally determined that it had a right to do so.'' The petition in that case shows that at the time suit was commenced the school district had only selected a site; it had not purchased it or developed it. Petitioners prosecuted the matter through a fourth amended complaint and appealed when a demurrer to that complaint without leave to amend was sustained.

*North* follows *Gogerty*. Petitioners sought to enjoin the construction of a proposed dwelling allegedly violative of building restrictions, and when the trial court refused the injunction, defendants constructed the building. On the authority of *Gogerty* a petition to dismiss was denied.

In considering the question of mootness in this case it must be borne in mind that it was the school district which contracted with the private contractor for the construction of the improvements, and it was the school district which had to pay for the construction. The State Architect's duties are only supervisory in nature. The school district installed the plastic pipe after permission to substitute it in part for metal pipe was given by the approval of Change Order No. 3. The record is clear that petitioners were cognizant of the proposed change and diligent in complaining about its approval. On April 17, 1967, they threatened legal action unless the State Architect reconsidered his approval. However, they did not commence *any* legal action until near the end of the period during which the plastic pipe was being installed, and they did not join the school district as a party until after installation had been *completed*. They did so then only because of the complaint of the then respondent to the petition, the State Architect, that the district was an indispensable party. Nor did petitioners or any other

party institute proceedings against the district to enjoin the use of the plastic pipe, or to compel it to follow the original plans and specifications on the ground the change order was invalid.[2] Thus, if one adopts petitioners' argument, the school district must either stop construction or proceed at the risk of having improperly expended district funds upon being apprised that there is verbal or written "grumbling," as one respondent puts it, and that certain taxpayers are complaining that a change order of the State Architect is invalid. In stopping construction the district would do so at the risk of being liable to the general contractor for losses he might sustain as well as losing the use of the school for the portion of time construction is delayed. It could not proceed until someone saw fit to determine the State Architect's authority to issue the order. The dilemma in which the school district would find itself under petitioners' argument illustrates the difference between this situation and that in *Gogerty*, where the district had not purchased the site when the propriety of the selection was questioned.

If, from the language of *Feder*, one may say that where there is fault of the defendant, the writ cannot be refused for mootness, we find no fault justifying its issuance here.

■ Petitioners' second contention is that the writ would have been effective because if the change order was ultra vires, the substitution would have been made without the State Architect's approval, under Education Code section 15640 the contract would not be valid, and no money could be paid out legally for the non-conforming work. Petitioners thus imply that if the State Architect were required to revoke the order, some further proceedings could then be taken as to money paid out by the date of the hearing, and the unpaid 10 percent of the cost of the plastic pipe installation could be retained. However, under the circumstances and in view of the various contentions made with respect to the validity of the order,[3] we

---

[2] While a trial court acts in excess of its jurisdiction if it attempts to enjoin the enforcement of a valid statute or ordinance (*City of Los Angeles* v. *Superior Court*, 51 Cal.2d 423 [333 P.2d 745]), an injunction by a trial court will not be disturbed where the issuance of the injunction grows out of a factual situation. (*Brock* v. *Superior Court*, 11 Cal.2d 682 [81 P.2d 931]. *Agricultural Prorate Com.* v. *Superior Court*, 5 Cal.2d 550, 586 [55 P.2d 495]. *Riverside Portland Cement Co.* v. *City of Los Angeles*, 178 Cal. 609 [174 P. 31]. Code Civ. Proc., § 526a. See also *Gogerty* v. *Coachella Valley Jr. College Dist.*, 57 Cal.2d 727 [21 Cal.Rptr. 806, 371 P.2d 582].)

[3] They run the gamut from questions of jurisdiction to make the change order at all, to the State Architect's power to make it without physical

think it would be unfair and unjust to the district and those connected with the construction for the trial court to have issued the writ, assuming arguendo that the pipe installation could be utilized but the money paid for it recovered, or even a part of its agreed price retained.

Applying equitable principles to the facts, the trial court did not abuse its discretion in refusing to issue the writ.

For the reasons above stated, the judgment of the trial court is affirmed.

Stephens, Acting P. J., and Reppy, J., concurred.

experiment, to whether he must consider only safety in doing so or must also consider durability and suitability, and if so, to what extent.