[No. C011501. Third Dist. Dec. 14, 1992.]

BILAL NASIR, Plaintiff and Appellant, v.
SACRAMENTO COUNTY OFFICE OF THE DISTRICT ATTORNEY,
Defendant and Respondent.

## Counsel

Joanna Rehm for Plaintiff and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Robert R. Anderson, Acting Assistant Attorney General, W. Scott Thorpe and David A. Rhodes, Deputy Attorneys General, for Defendant and Respondent.

## Opinion

**SPARKS, J.**—In this appeal we examine the procedural requirements for a nonjudicial forfeiture of property seized for illegal drug trafficking. (Health & Saf. Code, § 11470 et seq.) Among other things, the procedural statute governing such an administrative forfeiture requires the district attorney to give notice to the owner of the seized property setting forth the appraised value of the property as well as instructions for filing a claim. (Health & Saf. Code, § 11488.4, subds. (c), (j)(2) & (3); [all further statutory references are to this code unless otherwise indicated.) Although the notice in this case did neither, the district attorney nevertheless prepared a declaration of forfeiture of the seized property. We hold these defects to be fatal to the validity of the administrative forfeiture.

Plaintiff Bilal Nasir appeals from a judgment denying his petition for a peremptory writ of mandate directing the defendant Sacramento County Office of the District Attorney (hereafter district attorney) to set aside a declaration of forfeiture of plaintiff's vehicle and to proceed with a judicial action for forfeiture in which plaintiff may present his third party claim. We shall reverse and remand to the trial court with directions to grant the relief plaintiff seeks.

### Factual and Procedural Background

It appears that on August 1, 1990, plaintiff's adult son, Aaron Nasir, drove plaintiff's Chevrolet S-10 Blazer truck from Los Angeles to Sacramento, where he was arrested on charges relating to transporting and possessing cocaine and marijuana for sale.[1] The truck was seized by the Sacramento Police Department in the course of the son's arrest. (See § 11471, subd. (a).)

---

[1] Since plaintiff's claim has never been addressed on the merits, there has been no resolution of disputed factual questions. Nevertheless, the relevant factual allegations of the parties may be gleaned from the record.

The district attorney notified plaintiff by certified letter dated August 9th, a copy of which we have attached to this opinion, that "procedures to forfeit this property without judicial proceedings are under way." Plaintiff was informed that if he claimed an interest in the vehicle he would be required to file a verified claim within 10 days of actual receipt of the notice. Plaintiff received the certified letter on August 15, 1990.

Plaintiff did not understand how he should go about filing a verified claim to assert his interest in his vehicle. He contacted his son's attorney, who advised him to contact the Sacramento Superior Court. Plaintiff duly contacted the superior court clerk's office by telephone and was advised that he had to go personally to the Sacramento courthouse to select and use Sacramento County forms for making a claim. When plaintiff said that he lived in Los Angeles and could not personally go to the Sacramento courthouse, the clerk said there was nothing she could do to help him. After making numerous additional telephone calls and inquiries, plaintiff finally procured the appropriate form for making his claim.

Plaintiff filed his claim on August 28, 1990, one day late.[2] The district attorney notified plaintiff by letter that his claim was untimely and that "the vehicle is being administratively forfeited." Plaintiff made several attempts to convince the district attorney to consider his claim but the prosecutor adhered to his position that the claim was not timely. On October 1, 1990, the district attorney prepared a declaration of forfeiture.

Plaintiff petitioned for a writ of mandate to compel the district attorney to set aside his declaration of forfeiture and to file a petition for forfeiture in which plaintiff's claim could be adjudicated. Among other things, plaintiff complained that the notice of forfeiture proceedings did not provide directions for filing a claim and did not set forth the value of the vehicle. In

---

[2]Under section 11488.5, subdivision (a)(1), any person claiming an interest in the property alleged to be subject to forfeiture and who has been served by mail may, "within 10 days after receipt of actual notice, file with the superior court, as directed by the notice, a verified claim stating the nature of his or her interest in the property."

As plaintiff correctly notes, "[a]lthough the claim was filed 13 calendar days after actual receipt by [plaintiff], it was filed on the 11th judicial day. [Plaintiff] received notice on August 15, 1990, a Thursday. The 10th day, August 25, 1990, fell on a Saturday. The next court day was Monday, August 27. [Plaintiff's] claim was filed on August 28." (See Code Civ. Proc., § 12.)

No claim is made that the five-day extension for mailing under Code of Civil Procedure section 1013 applies here. (See, e.g., *Poster* v. *Southern Cal. Rapid Transit Dist.* (1990) 52 Cal.3d 266, 274 [276 Cal.Rptr. 321, 801 P.2d 1072]; *Malloy* v. *Workers' Comp. Appeals Bd.* (1991) 1 Cal.App.4th 1658, 1660 [2 Cal.Rptr.2d 820]; *Citicorp North America, Inc.* v. *Superior Court* (1989) 213 Cal.App.3d 563, 567-568 [261 Cal.Rptr. 668]; *Mario Saikhon, Inc.* v. *Agricultural Labor Relations Bd.* (1983) 140 Cal.App.3d 581, 583-584 [189 Cal.Rptr. 632]; *Amoroso* v. *Superior Court* (1979) 89 Cal.App.3d 240, 242 [152 Cal.Rptr. 398].)

opposition to the petition, the district attorney asserted that because plaintiff's claim was not filed in a timely manner he had no choice but to declare a forfeiture, and that in any event he had sold the subject vehicle and thus there was no res before the court. Although the trial court expressed some dissatisfaction with some of the district attorney's actions, it felt it had no alternative but to deny the petition for a writ of mandate. This appeal by plaintiff followed.

DISCUSSION

I

"Health and Safety Code sections 11470-11489 set forth a detailed procedure for the seizure and forfeiture of [specified property] traceable to unlawful drug transactions. Under the statutory scheme, title to the forfeitable property vests in the state from the time of the illegal conduct (§ 11470, subd. (h)) subject, however, to the proviso that any person claiming an interest in the property may file a verified claim in superior court within the time provided. (§ 11488.5.) [¶] In order to satisfy due process requirements, the statute specifies three types of notice of the forfeiture proceedings. First, the person from whose possession the property was seized is entitled to service of the petition of forfeiture. (§ 11488.4, subd. (c).) Second, 'any [other] person who has an interest in the seized property' is entitled to service of a notice of seizure and intended forfeiture along with instructions on filing a claim. (§ 11488.4, subds. (c), (j)(5).) And third, notice of forfeiture must be published once a week for three consecutive weeks in a newspaper of general circulation in the county of seizure. (§ 11488.4, subd. (e).)" (*People* v. *Fifteen Thousand Two Hundred Seventeen Dollars* (1990) 218 Cal.App.3d 720, 723-724 [268 Cal.Rptr. 450], fn. omitted.)[3]

Section 11470 specifies the types of properties which are subject to civil forfeiture in connection with illegal drug activities. The categories of forfeitable properties fall into three broad groups: (1) contraband, including illegal drugs themselves and controlled precursor chemicals used in making or refining illegal drugs; (2) the proceeds of illegal drug activities in whatever form they may be held; and (3) property which otherwise may be owned and used lawfully but which has been used in connection with or to facilitate illegal drug activities. With respect to a vehicle, section 11470,

---

[3]The history of the controlled substances forfeiture statutes is recounted in 3 Witkin and Epstein, California Criminal Law (2d ed. 1989) Punishment for Crime, section 1423, pages 1685-1686.

subdivision (e)(1), specifies particular offenses and minimum quantities of illegal drugs which must be involved for forfeiture to occur.[4]

When a third party, that is, a person who was not personally involved in the illegal drug activity, is the owner of the property which has been used in connection with drug activities, the propriety of forfeiture depends upon whether the third party knew or should have known of facts which made the property subject to forfeiture. (§ 11488.5, subd. (h).) In an action for forfeiture, the People have the burden of proof by a preponderance of the evidence that the property is subject to forfeiture and that a third party claimant knew or should have known facts which made the property subject to forfeiture. (§§ 11488.4, subd. (i); 11488.5, subd. (h).)

The procedures for forfeiture are set forth in sections 11488.4 and 11488.5, and contemplate both a judicial and a nonjudicial forfeiture. Essentially, a judicial forfeiture is accomplished through a civil action commenced by filing a complaint for forfeiture in the superior court. (§ 11488.4, subd. (a).) The procedures are expedited and the time constraints under which a third party claimant must act are abbreviated. (§ 11488.5, subds. (a)(1), (e)(1).) If a third party makes a timely claim, then he or she is entitled to a jury hearing, unless waived, at which the People bear the burden of proof. (§ 11488.5, subds. (e)(2), (f).)

Section 11488.4, subdivision (j), creates a procedure for forfeiture without judicial involvement which has become known as an "administrative" forfeiture. "Under section 11488.4, subdivision (j), if the property is within the jurisdictional amount, the district attorney may declare the property forfeit without a judicial proceeding. This procedure is known as nonjudicial or administrative forfeiture and was enacted to provide forfeiture without court involvement. There is a comparable federal procedure. [¶] With nonjudicial forfeiture, if the district attorney provides the requisite notice and no claim is filed, the district attorney prepares a written declaration of forfeiture of the subject property to the state and disposes of the property in accordance with section 11489. (§ 11488.4, subd. (j).) The purpose of nonjudicial forfeiture is to save the government the time and expense of a judicial proceeding in cases where the value of the property seized is small. [¶] The nonjudicial forfeiture proceeding is terminated, however, if anyone duly submits a claim to the seized property in response

---

[4]In addition, that subdivision provides an exemption for a spouse who is a registered owner and who has a community property interest in the subject vehicle if the vehicle has a value not in excess of $10,000 and is the only vehicle available to the registered owner's immediate family and provided the spouse neither knew nor should have known of the unlawful use of the vehicle.

to the notice of nonjudicial forfeiture. If a claim is filed, the district attorney cannot pursue nonjudicial forfeiture but must initiate a judicial forfeiture proceeding." (*People* v. *Property Listed in Exhibit One* (1991) 227 Cal.App.3d 1, 6-7 [277 Cal.Rptr. 672], citations omitted.)

The administrative forfeiture subdivision provides in full: "The Attorney General or the district attorney of the county in which property is subject to forfeiture under Section 11470 may, pursuant to this subdivision, order forfeiture of personal property not exceeding one hundred thousand dollars ($100,000) in value. The Attorney General or district attorney shall provide notice of proceedings under this subdivision pursuant to subdivisions (c), excluding the provision relating to service of the complaint, (d), (e), and (f), including: [¶] (1) A description of the property. [¶] (2) The appraised value of the property. [¶] (3) The date and place of seizure or location of any property not seized but subject to forfeiture. [¶] (4) The violation of law alleged with respect to forfeiture of the property. [¶] (5) The instructions for filing a claim with the superior court pursuant to Section 11488.5 and time limits for filing a claim. If no claims are timely filed, the Attorney General or the district attorney shall prepare a written declaration of forfeiture of the subject property to the state and dispose of the property in accordance with Section 11489. A written declaration of forfeiture signed by the Attorney General or district attorney under this subdivision shall be deemed to provide good and sufficient title to the forfeited property. [¶] The prosecuting agency ordering forfeiture pursuant to this subdivision shall provide a copy of the declaration of forfeiture to any person listed in the receipt given at the time of seizure and to any person personally served notice of the forfeiture proceedings. [¶] If a claim is timely filed and served, then the Attorney General or district attorney shall file a complaint for forfeiture pursuant to this section within 30 days of the receipt of the claim. The complaint for forfeiture shall then proceed pursuant to other provisions of this chapter, except that no additional notice need be given and no additional claim need be filed." (§ 11488.4, subd. (j).)

This so-called administrative forfeiture procedure is not intended to resolve third party claims to property which may be subject to forfeiture, and the prosecuting authority is not delegated quasi-judicial power to hear and determine third party claims. Instead, these procedures are intended solely to determine whether a third party will make a claim with respect to forfeitable property. As we have noted, if a timely claim is made, then the prosecuting authority is required to commence a judicial proceeding in order to effect a forfeiture. (*People* v. *Property Listed in Exhibit One, supra,* 227 Cal.App.3d at p. 7.) If no timely claim is made, then the prosecuting authority may effect a forfeiture by preparing a written declaration of forfeiture.

It is readily apparent that administrative forfeiture procedures serve important public interests. They conserve judicial resources and reduce court congestion by avoiding the need for the court and its staff to process uncontested forfeiture actions. They conserve the resources of the prosecuting authority by avoiding the necessity that personnel and other resources be assigned to pursue uncontested forfeiture actions. They reduce the burdens associated with storage and preservation of the property pending completion of uncontested forfeiture proceedings. And they avoid deterioration and depreciation over time to which some types of property may be subject.

While administrative forfeiture procedures have some salutary purposes, they are also the most draconian part of the harshest of all our laws respecting the private ownership of personal property. Under our forfeiture laws an otherwise innocent third party may be deprived of his lawful property without proof of knowledge or acquiescence in illegal drug activities, but simply because he or she should have known the property was being used in connection with such activities. In an administrative forfeiture the third party will be deprived of his property by the unilateral act of the prosecutor without even the safeguard of an impartial determination that a prima facie case exists to support forfeiture. (See § 11488.5, subd. (d).) And the time limits within which the third party must act to preserve his or her right to present a claim are extremely abbreviated. (§ 11488.5, subd. (a)(1).)

Under these circumstances certain legal safeguards are called into play. Our state and federal Constitutions require our state and federal governments to respect an individual's right to own and protect property. (Cal. Const., art. I, § 1; U.S. Const., Amend. XIV, § 1.) And our Constitutions compel these governments to respect an individual's right to be heard in defense of self or property. (Cal. Const., art. I, § 7, subd. (a); U.S. Const., Amend. XIV, § 1.) In accordance with these principles, the courts have held "that prior to an action which will affect an interest in life, liberty, or property protected by the Due Process Clause of the Fourteenth Amendment, a State must provide 'notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" (*Mennonite Board of Missions* v. *Adams* (1983) 462 U.S. 791, 795 [77 L.Ed.2d 180, 185, 103 S.Ct. 2706]. See also *Calero-Toledo* v. *Pearson Yacht Leasing Co.* (1974) 416 U.S. 663, 680, fn. 15 [40 L.Ed.2d 452, 466, fn. 15, 94 S.Ct. 2080]; *Kash Enterprises, Inc.* v. *City of Los Angeles* (1977) 19 Cal.3d 294, 309 [138 Cal.Rptr. 53, 562 P.2d 1302]; *People* v. *Swink* (1984) 150 Cal.App.3d 1076, 1080 [198 Cal.Rptr. 290].) Consequently, the forfeiture statutes must "afford due process of law to those persons who are subject to their provisions and provide them with

an adequate remedy to protect their property rights. Such a remedy, to be adequate, must provide for both notice and a hearing on the penalty or forfeiture sought to be imposed, except in cases where the property sought to be held forfeited is incapable of lawful use." (34 Cal.Jur.3d, Forfeitures and Penalties, § 2, p. 318, fns. omitted.) These constitutional concerns are also reflected in this state's long-standing judicial policy that strongly favors determination of disputed issues on the merits. (See *Addison* v. *State of California* (1978) 21 Cal.3d 313, 319 [146 Cal.Rptr. 224, 578 P.2d 941]; *Bollinger* v. *National Fire Ins. Co.* (1944) 25 Cal.2d 399, 407-408 [154 P.2d 399]; *Waybright* v. *Anderson* (1927) 200 Cal. 374, 377 [253 P. 148].) And, of course, our law abhors a forfeiture. (See Civ. Code, §§ 3275, 3369; *Ellis* v. *Order of United etc. Travelers* (1942) 20 Cal.2d 290, 301 [125 P.2d 457].)[5] With respect to federal forfeiture proceedings, the federal appellate courts have concluded that "[d]ue process protections ought to be diligently enforced, and by no means relaxed, where a party seeks the traditionally-disfavored remedy of forfeiture." (*U.S.* v. *Borromeo* (4th Cir. 1991) 945 F.2d 750, 752. See also *U.S.* v. *$38,000.00 in U.S. Currency* (11th Cir. 1987) 816 F.2d 1538, 1547; *Willis* v. *United States* (7th Cir. 1986) 787 F.2d 1089, 1093; *Vance* v. *United States* (5th Cir. 1982) 676 F.2d 183, 187. See generally, 1 Smith, Prosecution and Defense of Forfeiture Cases (1992) ¶ 9.03, pp. 9-42.8 to 9-50.) Consequently, "the burden on the government to adhere to the procedural rules should be heavier than on claimants. Forfeitures are not favored in the law; strict compliance with the letter of the law by those seeking forfeiture must be required." (*U.S.* v. *$38,000.00 in U.S. Currency*, *supra*, 816 F.2d at p. 1547, and cases cited there.)

Plaintiff insists he was effectively deprived of his property without a hearing or consideration by a neutral judicial or quasi-judicial decision maker, and by the unilateral stroke of a pen by the very party charged with the adversarial duty of pursuing forfeitures. In view of the constitutional and legal policies we have recounted our course is clear; we must strictly construe the law in favor of a hearing on the merits and must require the district attorney to adhere rigidly to the procedural requisites for effecting an administrative forfeiture. (See *People* v. *One 1937 Lincoln etc. Sedan*

[5]In a broad and general sense we deal here with laws the very purpose of which is to require those who engage in illegal drug activities to forfeit the fruits and instrumentalities of those activities. There are, of course, sound public policies which support the Legislature's determination to impose a forfeiture in such circumstances. However, "forfeiture" in that sense is not of immediate concern to plaintiff. Rather, what plaintiff forfeited, and what he seeks to regain, is merely the right to make his claim and have it determined by an impartial decision maker. This forfeiture of the right to a determination on the merits is precisely the type of forfeiture which the law abhors. Forfeiture in this sense cannot escape the law's abhorrence by reference to the vile behavior of drug dealers, because at this point there has been no showing or effort to show that plaintiff was anything other than a wholly innocent third party.

(1945) 26 Cal.2d 736, 738 [160 P.2d 769]; *People* v. *$6,500 U.S. Currency* (1989) 215 Cal.App.3d 1542, 1547 [264 Cal.Rptr. 294].) In short, we are neither inclined nor permitted to accord the administrative forfeiture statute what Justice Holmes, in a different context, called "a little play in its joints." (*Bain Peanut Co.* v. *Pinson* (1930) 282 U.S. 499, 501 [75 L.Ed. 482, 491, 51 S.Ct. 228].) Stated another way, we must reject the district attorney's anomalous position that a claimant must rigidly comply with statutory procedures but close is good enough for government work.

 In turning to the circumstances of this case, the notice sent to plaintiff by the district attorney was facially deficient in at least two respects. Section 11488.4, subdivision (j)(2), requires that the notice provided to potential third party claimants include "[t]he appraised value of the property." The notice sent to plaintiff contains no reference at all to value. Thus, it contains nothing that could even arguably be construed as an attempt to comply with the requirements of the statute.[6] The requirement that an appraised value be given may serve to establish that the property is within the jurisdictional limits of an administrative forfeiture. It may also serve to aid the potential claimant in determining whether it is worthwhile to pursue a claim or to hire counsel to make a claim. There may be other purposes involved. Whatever the purpose of this requirement, the fact is that an appraised value is statutorily required and was completely lacking from the notice given to plaintiff.

In addition, section 11488.4, subdivision (j)(5), requires that notice of administrative forfeiture proceedings include "instructions for filing a claim with the superior court pursuant to Section 11488.5 and time limits for filing a claim." Section 11488.5, subdivision (a), provides: "Any person claiming an interest in the property alleged to be subject to forfeiture may, at any time within 30 days from the date of the first publication of the notice of seizure, if that person was not personally served or served by mail, or within 10 days after receipt of actual notice, file with the superior court, as directed by the notice, a verified claim stating the nature of his or her interest in the property. An endorsed copy of the claim shall be served by the claimant on

---

[6]In addition to the notice required to be "served by personal delivery or by certified mail" upon any person who has an interest in the seized property, the statute requires that when a forfeiture action is filed, "notices of the initiation of forfeiture proceedings shall be published once a week for three successive weeks . . . ." (§ 11488.4, subds. (c), (e).) The administrative forfeiture provisions direct that notice shall be given, among other subdivisions, pursuant to section 11488.4, subdivision (e). (§ 11488.4, subd. (j).) The published notice utilized by the district attorney in this case sets forth an "estimated value of $7,500.00" for the vehicle. We need not here determine whether the statutory requirement of an "appraised value" would be satisfied by inclusion of an estimated value, a Kelly Blue Book value, or some other reference to value, since the district attorney made no effort to set forth a value in the notice sent to plaintiff.

the Attorney General or district attorney, as appropriate, within 10 days of the filing of the claim. The Judicial Council shall develop and approve official forms for the verified claim that is to be filed pursuant to this section. The official forms shall be drafted in nontechnical language and shall be made available through the office of the clerk of the appropriate court."

When section 11488.4, subdivision (j)(5), and section 11488.5, subdivision (a), are read in conjunction, it is clear that although the Legislature intended to impose a burden of prompt action upon a third party claimant, it did not intend that such a claimant would be deprived of his or her right to make a claim through a lack of technical legal knowledge. ■ "Instructions" are generally intended to furnish a person with directions, or to impart special knowledge or information. (See Webster's Third New Internat. Dict. (1971) p. 1172 [see definitions for instruct and instruction]; 44 C.J.S., Instruct, p. 416.) ■ The Legislature decreed that third party claims be submitted on official forms drafted in nontechnical language and made available through the court. It further decreed that the notice provided to potential claimants must include instructions for filing the claim and did not merely require that it include advice that a claim must be filed. These provisions, construed strictly in favor of the claimant, require that the notice contain instructions reasonably calculated to enable a diligent claimant to make a timely claim. To fulfill this requirement the notice must at least advise the claimant that the claim is to be submitted on an official form available from the court.[7] The notice utilized by the district attorney in this case was insufficient in this respect as well.

## II

■ Despite these deficiencies, it remains to be determined whether plaintiff is entitled to the relief he seeks. Preliminary to addressing this question, it will be useful to set forth what is not involved here. First, we are not here concerned with an action to compel the return of property. In this action plaintiff does not seek the return of his vehicle; rather, he seeks to compel the district attorney to file a complaint for forfeiture as required by

---

[7]Plaintiff's difficulties in making his claim were compounded when he contacted the clerk of the court and was told that he had to appear personally and otherwise could not be assisted. Since the notice provided by the district attorney was deficient in this and other respects, we need not determine whether erroneous advice from the court clerk, standing alone, might excuse a failure to file a claim timely.

section 11488.4, subdivision (j), so that his claim can be heard.[8] Second, we are not here concerned with a claimant who made no effort to comply with the claim filing requirements of the statutory procedure. ██ █ Plaintiff has explained the steps he took and the hurdles he had to overcome to file a claim and in fact he filed his claim only one day after the ten-day filing period according to the district attorney's view of the case.[9] Third, we are not concerned here with a claimant who sat on his rights after notice that his claim was rejected as untimely. Plaintiff consulted counsel and made diligent efforts to persuade the district attorney to recognize his claim and file a complaint for forfeiture so that his claim could be heard and, failing that, commenced this action for that purpose. Thus, we are not confronted with the specter of a dilatory claimant who first sought judicial relief after an unreasonable period of time had passed. (See 1 Smith, Prosecution and Defense of Forfeiture Cases, *supra*, ¶ 6.02, pp. 6-30-6-31.)[10] Finally, we are not here required to determine whether, upon failure of the personal notice required to be sent to certain owners, the prosecuting authority would otherwise be entitled to rely upon its published notice of administrative forfeiture. A claim pursuant to the published notice must be filed within 30 days of the first publication and plaintiff's claim was filed well within that period. (§ 11488.5, subd. (a).)

The district attorney asserts that mandate is an inappropriate proceeding because he had no power to do anything other than to execute a declaration of forfeiture. We reject the claim that the district attorney had no power to file a complaint for forfeiture. Before a judicial action is commenced prosecutors have broad discretion in the application and enforcement of our laws. (*People* v. *Sidener* (1962) 58 Cal.2d 645, 650 [25 Cal.Rptr. 697, 375 P.2d 641]; *Wilson* v. *Sharp* (1954) 42 Cal.2d 675, 678-679 [268 P.2d 1062]; *People* v. *Municipal Court* (1972) 27 Cal.App.3d 193, 203-205 [103

---

[8]Section 11488.4, subdivision (j), provides in relevant part that "[i]f a claim is timely filed and served, then the Attorney General or district attorney shall file a complaint for forfeiture pursuant to this section within 30 days of the receipt of the claim. . . ."

[9]Filing a claim was a prerequisite to plaintiff's right to seek relief through mandate. Under section 11488.4, subdivision (j), a prosecuting agency's duty to file a complaint for forfeiture does not arise unless and until a claim is filed. As a general rule mandate will not lie unless there has been a demand and refusal if a demand is a requisite to the official duty at issue. (*Metropolitan Life Ins. Co.* v. *Rolph* (1920) 184 Cal. 557, 562 [194 P. 1005]; *Nelson* v. *Anderson etc. Irr. Dist.* (1921) 51 Cal.App. 92, 98 [196 P. 292]; but see *Jensen* v. *McCullough* (1928) 94 Cal.App. 382, 389 [271 P. 568].) While there may be other forms of remedy available to a third party who has not filed a claim, mandate to compel the prosecuting authority to commence a forfeiture action would not be appropriate.

[10]We have no doubt that trial courts have inherent power to prevent abuses in such cases under traditional legal and equitable doctrines. (See, e.g., *Scott* v. *Municipal Court* (1974) 40 Cal.App.3d 995, 996 [115 Cal.Rptr. 620]; *Estate of Glassgold* (1950) 97 Cal.App.2d 859, 863 [218 P.2d 1016].)

Cal.Rptr. 645, 66 A.L.R.3d 717].) Administrative forfeiture, by its very nature, must occur before a judicial action is commenced and while the matter is still an executive function. We perceive nothing in the statutory procedures which would preclude a prosecuting agency from deciding to proceed with a judicial forfeiture action after starting the procedures for administrative forfeiture if, for whatever reason, it decided the matter should be determined judicially. ■ However, prosecutorial discretion is not subject to appellate review and cannot be controlled through a writ of mandate. (*People* v. *Adams* (1974) 43 Cal.App.3d 697, 707-708 [117 Cal.Rptr. 905].) Accordingly, if the prosecuting agency decides to proceed with a declaration of forfeiture without judicial involvement, then that decision must stand or fall on its own merits and cannot be reviewed as a matter of prosecutorial discretion.

■ A writ of mandate may be issued "to compel the performance of an act which the law specially enjoins, as a duty resulting from an office, trust, or station; . . ." (Code Civ. Proc., § 1085.) Under section 11488.4, subdivision (j), the filing of a timely claim compels the prosecuting agency to proceed with a complaint for forfeiture if it wishes to effect a lawful forfeiture. Since the notice provided to plaintiff by the district attorney was legally insufficient, plaintiff's claim must be regarded as timely. The defective notice did not trigger the 10-day limitation period. With respect to forfeiture statutes it has been held that "proper service of process is a prerequisite to any objection from the government to the timeliness of a claim." (*U.S.* v. *Borromeo, supra,* 945 F.2d at p. 753.) The fact that plaintiff had actual (but defective) notice of the administrative proceeding does not change this result. Otherwise, the actual notice concept would "sap all force from the heightened procedural protections" required in forfeiture actions. (*Ibid.*; see also *U.S.* v. *$84,740.00 U.S. Currency* (9th Cir. 1990) 900 F.2d 1402, 1405-1406; *U.S.* v. *$38,000.00 in U.S. Currency, supra,* 816 F.2d at pp. 1546-1547.) Because plaintiff's claim was timely, mandate is an appropriate remedy to compel the district attorney to perform the act enjoined upon him by law, that is, the commencement of a judicial forfeiture action. We thus conclude that plaintiff has chosen an appropriate remedy.

■ The district attorney retorts that he has already disposed of the vehicle[11] and thus "[i]n this proceeding the court does not have control of the res, and therefore it has no jurisdiction." The district attorney confuses an action for judicial forfeiture, which is an in rem proceeding (*People* v. *Superior Court* (*Rishwain, Hakeem & Ellis*) (1989) 215 Cal.App.3d 1411, 1414 [264 Cal.Rptr. 28]), with an action for mandate to compel the performance of official duty, which is an in personam proceeding (see *Comfort* v.

---

[11]In the proceedings below, the district attorney filed a declaration asserting that the seized vehicle had been sold at an auction in Modesto on December 1, 1990.

*Comfort* (1941) 17 Cal.2d 736, 741 [112 P.2d 259]; *Berger* v. *Superior Court* (1917) 175 Cal. 719, 721 [167 P. 143, 15 A.L.R. 373]). We reiterate that in this proceeding plaintiff does not seek to adjudicate his claim or to obtain the return of his property, he seeks only to compel the district attorney to perform a duty enjoined upon him by law. The superior court has jurisdiction in proceedings for mandate (Code Civ. Proc., § 1085), and has personal jurisdiction over the parties. Accordingly, the court has jurisdiction in the fundamental sense.

Although not articulated as such, the district attorney's argument does point to an important consideration in a proceeding for mandate. ▮ "As a general proposition courts will not issue a writ of mandate to enforce an abstract right of no practical benefit to petitioner, or where to issue the writ would be useless, unenforceable or unavailing." (*Kirstowsky* v. *Superior Court* (1956) 143 Cal.App.2d 745, 749 [300 P.2d 163].) The right to be heard in defense of one's property is not a mere abstract right but is a right of substantial importance. ▮ However, the district attorney's assertion that he has sold the vehicle suggests that it may be difficult for him to produce the vehicle for a forfeiture proceeding. For several reasons we conclude that this difficulty is not a defense to plaintiff's petition for a writ of mandate.

First, the district attorney's difficulty in producing the vehicle is a problem of his own making. He provided insufficient notice to invoke the administrative forfeiture procedures, executed a declaration of forfeiture that was invalid as to plaintiff, and disposed of the vehicle with full awareness that plaintiff was diligently pursuing a hearing on the merits. It has been said that a court will dismiss an action if, "without any fault of the defendant," it becomes impossible for the court to grant the plaintiff any effectual relief. (See *Feder* v. *Lahanier* (1962) 200 Cal.App.2d 483, 485 [19 Cal.Rptr. 638]; compare *Genser* v. *McElvy* (1969) 276 Cal.App.2d 709, 712-714 [82 Cal.Rptr. 521].) But it has also been held that a governmental defendant may be held to have acted at its own risk if it proceeds with a challenged action with awareness that the plaintiff is pursuing his legal remedies. (*Gogerty* v. *Coachella Valley Junior College Dist.* (1962) 57 Cal.2d 727, 732 [21 Cal.Rptr. 806, 371 P.2d 582]; *Smith* v. *North* (1966) 244 Cal.App.2d 245, 250 [53 Cal.Rptr. 94].) This exception to the rule requiring a res has been applied to drug forfeiture proceedings. Thus, in a civil forfeiture proceeding for unlawful drug trafficking, a reviewing court noted that "it seems clear that the res was released improperly. That being an exception to the general rule, the reswas never removed from the control of the superior court nor was the lower court's jurisdiction terminated. A

contrary result would permit the district attorney to file a petition of forfeiture—claiming the notice requirements have been met without actually adhering to them (as is the case here)—and the defendant would be without recourse in the superior court to recover illegally seized property because title to the property had been transferred to the state. Transfer of title would thus insulate the district attorney and deny a defendant due process of law." (*Baca* v. *Minier* (1991) 229 Cal.App.3d 1253, 1266 [280 Cal.Rptr. 810].) The district attorney essentially asserts that plaintiff should be deprived of a forfeiture hearing on the merits because the district attorney wrongfully disposed of plaintiff's vehicle while wrongfully refusing to accord him a hearing on the merits. Such a two-wrongs-make-a-right attempt to defeat a hearing on the merits obviously is not favored in the law and must be rejected. (See *Rattray* v. *Scudder* (1944) 67 Cal.App.2d 123, 127-128 [153 P.2d 433].)

Second, the doctrine we have cited applies to preclude the issuance of mandate where it is legally impossible to accord the plaintiff any effectual relief rather than where it is merely difficult as a practical matter for the defendant to perform the duty enjoined upon him by law. For example, in *Board of Education* v. *Council* (1905) 1 Cal.App. 311 at page 312 [82 P. 89], the plaintiff sought to compel the defendant agency to levy a property tax for school purposes. However, the time in which a valid levy could be made had passed and a belated levy could not obligate property owners to pay the tax. It was thus legally impossible to accord the plaintiff the relief it sought and mandate was not an appropriate remedy. (See also *Board of Education* v. *Common Council* (1900) 128 Cal. 369, 372 [60 P. 976].) In contrast, even if we accept the district attorney's assertion that he must have possession of the vehicle to proceed with a complaint for forfeiture, the asserted disposal of the vehicle does not make it legally impossible for him to perform his duty, since the district attorney may be able to negotiate for the return of the vehicle to his possession through repurchase or other means. The district attorney's disposal of the vehicle suggests that it may be difficult and perhaps even factually impossible for him to produce the vehicle for forfeiture proceedings, but it does not establish that it is legally impossible to perform the duty enjoined upon him by law.

Third, we are not satisfied that the district attorney's disposal of the vehicle precludes him from filing a complaint for forfeiture so that plaintiff can have a hearing on the merits. It is true that in *People* v. *$6,500 U.S. Currency, supra*, 215 Cal.App.3d 1542, relied upon by the prosecutor, the Court of Appeal directed that a petition for forfeiture be dismissed based upon the People's inability to produce the res. However, in that case the prosecution had permitted the funds to be disbursed to the owner's attorney

pursuant to an assignment in payment of fees incurred in the defense of criminal charges. The Court of Appeal strictly construed the forfeiture statute against the prosecution in concluding that since the People had neither actual nor constructive possession of the res, the action could not be maintained. (*Id.* at p. 1547.) But in so holding the court recognized that actual possession is not invariably essential to an action for forfeiture. (*Ibid.* See *People* v. *Superior Court* (*Rishwain, Hakeem & Ellis*), *supra*, 215 Cal.App.3d at pp. 1414-1415.)[12]

In *People* v. *Superior Court* (*Rishwain, Hakeem & Ellis*), *supra*, 215 Cal.App.3d at page 1414, in footnote 1, we noted that in construing our state forfeiture statutes, federal decisions construing comparable federal statutes are entitled to great weight and are particularly persuasive. In the decisions of the federal appellate courts, the clear trend and weight of authority would not deny a determination on the merits to a plaintiff in these circumstances merely because a defendant has improperly disposed of his property.

The "no *res*, no jurisdiction" rule is based on an ancient admiralty rule. (*U.S.* v. *One Lot of $25,721.00 in Currency* (1st Cir. 1991) 938 F.2d 1417, 1418.) Pursuant to that rule a person who sought payment for materials and repairs provided to a foreign vessel could bring an action (referred to as a libel) against the vessel itself. (See *The Rio Grande* v. *Otis* (1875) 90 U.S. (23 Wall.) 458 [23 L.Ed. 158].)[13] If the vessel had departed from the jurisdictional territory of the court then the court could not assert in rem jurisdiction over it, unless the departure was accidental, fraudulent, or improper. (*Ibid.*) This admiralty rule was, at least initially, held to be incorporated into our forfeiture statutes due to their in rem nature. (*U.S.* v. *One Lot of $25,721.00 in Currency, supra*, 938 F.2d at p. 1418.) However, the rule has been severely criticized when its application would deprive a property owner of his property without a determination on the merits. (See

---

[12]In *People* v. *Superior Court* (*Rishwain, Hakeem & Ellis*), *supra*, the People sought forfeiture of certain moneys which the accused persons had paid over to their defense attorneys. We concluded that the forfeiture action could proceed and that if necessary the court should issue a pendente lite order to preserve the status quo of the funds pending determination on the merits. (215 Cal.App.3d at pp. 1414-1415.) That decision is not necessarily at odds with the decision in *People* v. *$6,500 U.S. Currency, supra*. In the latter case the funds had been disbursed pursuant to a court order that, although it appeared to have been incorrect, the People allowed to become final without review. (215 Cal.App.3d at p. 1545, fn. 2.) In contrast, in *People* v. *Superior Court* (*Rishwain, Hakeem & Ellis*), *supra*, the People acted promptly to give the court constructive possession of the res by means of an order pendente lite.

[13]This in rem admiralty rule applied only to foreign vessels. Where a domestic vessel was involved an in personam action was the appropriate remedy and an in rem proceeding was not permitted. (*Ibid.*)

the dis. opns. in *U.S.* v. *One Lear Jet Aircraft, Ser. No. 35A-280* (11th Cir. 1988) 836 F.2d 1571.)

In several circuits federal appellate courts have jettisoned the old admiralty rule as applied to forfeiture actions. (*U.S.* v. *One Lot of $25,721.00 in Currency, supra*, 938 F.2d at pp. 1419-1420; *U.S.* v. *$95,945.18, U.S. Currency* (4th Cir. 1990) 913 F.2d 1106, 1109; *U.S.* v. *Aiello* (2d Cir. 1990) 912 F.2d 4, 6-7.) These decisions hold that by invoking statutory forfeiture laws, the government submits itself to in personam jurisdiction and cannot avoid a final determination on the merits by insistence on strict in rem jurisdictional rules. (*Ibid.*) Under such a rule defendant obviously could not preclude plaintiff from having a hearing on the merits by its premature disposal of his property.

See ██ ██ ██ In several other circuits the courts still adhere to the admiralty in rem rule, but the harshness of the rule is ameliorated through several means, such as strict construction of the meaning of the court's loss of control over the res (*U.S.* v. *One 1983 Homemade Vessel Named Barracuda* (11th Cir. 1988) 858 F.2d 643, 646-647), liberal application of the "accidental, fraudulent or improper removal" exception to the rule in favor of a determination on the merits (*U.S.* v. *$29,959.00 U.S. Currency* (9th Cir. 1991) 931 F.2d 549, 552-553; *United States* v. *Martinson* (9th Cir. 1987) 809 F.2d 1364, 1368-1369), the suggestion that in the absence of the res the parties can stipulate to jurisdiction sufficient to support resolution of the dispute between themselves (See 1 Smith, Prosecution and Defense of Forfeiture Cases, *op. cit. supra*, ¶ 9.01[5][b], p. 9-18; see *Treasure Salvors* v. *Unidentified Wrecked, etc.* (5th Cir. 1978) 569 F.2d 330, 333-336),[14] and the application of jurisdiction over a "substitute *res*" to which the original res is traceable (see *U.S.* v. *$57,480.05 U.S. Currency and Other Coins* (9th Cir. 1984) 722 F.2d 1457, 1459).[15]

Among the federal authorities we find one decision of the Ninth Circuit particularly apposite here. In *U.S.* v. *$84,740.00 U.S. Currency, supra*, 900

---

[14]An in rem action is a proceeding against the property itself and potential claimants are bound by a judgment against the property. An in personam action is a proceeding between the parties and only the parties and those in privity with them are bound by the judgment. By stipulating to the resolution of a dispute over property on an in personam basis in the absence of the res, the parties can bind only themselves as to the dispute between themselves, and other potential claimants are not bound. (*Ibid.*)

[15]Federal statutory provisions provide for a variety of circumstances in which a "substitute *res*" can be utilized. For example, in some circumstances a claimant can post a bond to obtain a prehearing return of the property in which case the bond serves as a substitute res. And in some circumstances the government is permitted to sell the property pending hearing and to pursue forfeiture against the proceeds. (See generally 1 Smith, Prosecution and Defense of Forfeiture Cases, *op. cit. supra*, ch. 8.)

F.2d 1402, the government filed an action for forfeiture but failed to verify the complaint as required by law. When the potential claimants did not answer the complaint a default judgment was entered. Over two years later a claimant filed a motion to abate the forfeiture which was denied on the ground that the government had disposed of the res. On appeal the court held that due to the lack of verification the court did not acquire jurisdiction over the res, the default judgment was invalid, and the government's disposal of the res pursuant to an invalid default judgment was "improper" within the meaning of the exception to the in rem rule. The court remanded the case so that the government could amend its complaint to include a verification and the matter could proceed on the merits. (*Id.* at p. 1406.)

In view of these authorities we are satisfied that the district attorney's disposal of plaintiff's vehicle cannot constitute a defense to plaintiff's petition for a writ of mandate to compel him to proceed with an action for forfeiture. Whether we follow the lead of several federal circuits and jettison the strict in rem rule where it would thwart a determination on the merits because the government has too quickly disposed of property it has seized, or apply the long-standing "accidental, fraudulent or improper removal" exception to the rule, we see "no good reason why the government should be allowed to insulate itself from the [judicial] process by wrapping itself in the mantle of an admiralty fiction designed at an earlier time to meet a problem totally unrelated to present day civil forfeiture proceedings." (*U.S.* v. *One Lot of $25,721.00 in Currency, supra,* 938 F.2d at pp. 1419-1420.)

In summary, we reach the following conclusions: (1) The district attorney's declaration of forfeiture was invalid as to plaintiff due to the failure to give plaintiff proper notice of the proceedings. (2) By virtue of plaintiff's third-party claim to the subject vehicle, the district attorney was legally required to proceed with a judicial forfeiture action to effect a forfeiture of the vehicle. (3) The district attorney's duty to proceed with judicial forfeiture is a duty which he may be compelled to perform by writ of mandate. (4) The district attorney's improper disposal of the vehicle does not deprive the court of jurisdiction to issue a writ of mandate to compel the performance of this duty.

Since the district attorney asserts that he has disposed of the vehicle and thus may not be able to return it to plaintiff in the event he prevails, the court may retain jurisdiction to compensate plaintiff in that event. (See Code Civ. Proc., § 1095; *Gonzales* v. *Internat. Assn. of Machinists* (1963) 213 Cal.App.2d 817, 820-821 [29 Cal.Rptr. 190].)

## DISPOSITION

The judgment is reversed, and the matter is remanded to the trial court with directions to issue a peremptory writ of mandate in accordance with the views expressed in this opinion. The plaintiff is awarded his costs on appeal.

Puglia, P. J., and Nicholson, J., concurred.

A petition for a rehearing was denied January 7, 1993, and respondent's petition for review by the Supreme Court was denied March 18, 1993.

APPENDIX

# DI.TRICT ATTORNE :

### SACRAMENTO COUNTY

STEVE WHITE
District Attorney

TIMOTHY M. FRAWLEY
Chief Deputy

August 9, 1990 CERTIFIED LETTER

Biilal Nasir
637 E 90th Street
Los Angeles, CA 90002

Dear Mr. Nasir

On August 1, 1990 at 320 Seavey Circle, Sacramento, California, officers of the Sacramento Police Department seized property for forfeiture in connection with a violation of the California Health and Safety Code sections 11351.5, 11359 and 11352. The seized property is described as follows: One 1986 Chevrolet Blazer, license number 2JDT817, vehicle identification number 1G8CS1ER1G8115096.

Pursuant to Section 11488.4(j) of the California Health and Safety Code, procedures to forfeit this property without judicial proceedings are under way.

If you claim an interest to this property, you must, within ten days of actual receipt of this notice, filed a verified claim stating your interest in the seized property with the Clerk of the Superior Court, 720 Ninth Street, Sacramento, California, 95814. You also must provide the Office of the Sacramento County District Attorney with a verified copy of the claim directed to the address listed in the letterhead.

If your claim is not timely filed, the Sacramento District Attorney's Office will declare the property described in this letter to be forfeited to the state. Then it will be disposed of as provided in Health and Safety Code Section 11489.

Very truly yours

STEVE WHITE
DISTRICT ATTORNEY

MARYANNE GILLIARD
Deputy District Attorney
(916) 440-6543

MG/gf

1·2

Exhibit A