[No. E010233. Fourth Dist., Div. Two. Oct. 3, 1994.]

THE PEOPLE, Plaintiff and Respondent, v.
$8,921 UNITED STATES CURRENCY, Defendant;
FLORITA LEE JACKSON, Defendant and Appellant.

**[Opinion certified for partial publication.*]**

---

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication except parts III, B, C, and D.

## COUNSEL

Freddie Fletcher for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, and Jeffrey J. Koch, Deputy Attorney General, for Plaintiff and Respondent.

## OPINION

TIMLIN, J.—

### I

### INTRODUCTION

Florita Lee Jackson (Jackson) appeals from the trial court's order denying her motion to set aside the clerk's default and a default judgment (order)[1] and from the default judgment and order of forfeiture (judgment).

### II

### FACTUAL AND PROCEDURAL BACKGROUND

In March 1990, officials at an elementary school in Redlands contacted the local police department after a teacher observed Cedric N., one of the students, giving money to his classmates. Officer Holmes responded and, on March 22, 1990, seized $4,041 from Cedric.

Holmes subsequently told Officer Fitzmaurice (Fitzmaurice) that Cedric had told him that he had taken the money from his mother's dresser drawer, and that he believed his mother received the money from people to whom she sold things at night from their apartment door. Cedric also volunteered that there was more money in the drawer. Fitzmaurice contacted Cedric's mother, received consent to search her apartment and discovered an additional $4,880 in a dresser drawer in the master bedroom. Cedric's mother signed a disclaimer of ownership, and stated her belief that the money had been brought to her home by a woman known to her as "Flo, Vera, or Florita" who lived in Los Angeles, and who had not wanted to keep the money in her own home because her son was a gang member. Fitzmaurice seized that currency.

The money was presented to a dog trained to detect the presence of narcotics. The dog "alerted" to the seized money, indicating it contained

---

[1] An order denying a motion to set aside a default judgment is independently appealable as an order made after judgment. (*Jade K.* v. *Viguri* (1989) 210 Cal.App.3d 1459, 1469 [258 Cal.Rptr. 907].)

trace amounts of cocaine. As the result of further investigation, Jackson was located in Los Angeles.

On August 29, 1990, Jackson was personally served with a·notice of seizure and intended forfeiture of the seized currency.

On September 10, 1990, Jackson, by and through her attorney, filed a verified claim to the seized money in the amount of $8,921 (claim), opposing its forfeiture pursuant to Health and Safety Code section 11488.5.[2] She served a copy of her claim on the People.[3]

On September 11, the People filed a "complaint" for forfeiture pursuant to section 11488.4.

On September 12, 1990, the People served a first set of interrogatories on Jackson. Jackson served her responses to interrogatories on October 13, 1990.

On May 31, 1991, a notice to claimant and copy of the complaint for forfeiture was served on Jackson, care of her attorney, by regular mail. The notice, which referenced sections 11488.4 and 11488.5, stated that Jackson had 30 calendar days after the notice was served on her to file a typewritten response with the court. It also stated that, "You may not use a Claim Opposing Forfeiture as a response," and warned that failure to file a timely response might lead to loss of the money without further warning from the court.

On July 2, Jackson served interrogatories on the People. The proof of service attached to these interrogatories indicated that the enclosed documents also included Jackson's answer to the complaint. However, the reference to her answer had been crossed out.

Allegedly on July 2, Jackson also served, by mail, her answer to the complaint. The proof of service indicates that the answer was mailed on July 2; however, the proof of service was executed on July 1. According to Jackson's attorney, on July 2 he employed a process server to file Jackson's answer with the superior court. He declared that it was "not until the last day to respond to plaintiff's complaint, however, that the process server attempted to file it. The Superior Court Clerk refused to file the answer

---

[2]All further statutory references will be to the Health and Safety Code except as otherwise noted.

[3]The word "People," for the purposes of this opinion, shall include in its meaning the district attorney or Attorney General as the People's legal representatives.

because no proof of service to the district attorney was attached to it. I was notified by the process server on the following day, and thereupon included the neglected proof of service. When the process server returned on July 10, 1991, however, the Clerk would not file the answer because a default had been entered on July 8, 1991."

On July 8, as noted above, the People obtained entry of Jackson's default; a copy of the request for default was mailed on July 8 to Jackson's attorney.

On July 10, Jackson's process server attempted to file an answer to the complaint but the court clerk would not accept it because a default as to Jackson had been entered.

On July 16, the judgment and an order for distribution of the $8,921 were filed. The judgment, which was apparently prepared by the People, stated:

"There being no verified claim on file with this court in the above entitled action, Default having been entered in this court on July 8, 1991, against claimant, Florita Jackson,[4]

"It Is Hereby Ordered, Adjudged and Decreed that the defendant property seized pursuant to Health and Safety Code section 11488 is declared forfeited to the State as provided in Health & Safety Code section 11488.5(b)."

On August 21, Jackson filed a motion to set aside the default and default judgment. On September 24, the People filed their opposition to this motion.

On September 26, the lower court denied Jackson's motion. In its ruling, the court stated:

"The Court finds that the 1990 enactment which amended the H & S codes re: forfeiture meets the test of *Aetna Cas. Surety Co.* v. *Ind. Acc. Com.* (1947) 30 C[al.]2d 388 [182 P.2d 159] which states that if a statute is defined as procedural, then it may be applied retroactively.

"The 1990 amendment did not create a new cause of action nor eliminated [*sic*] a defense.

"The Court finds that prior to 1991, the Claimant was entitled to a hearing and after 1991, the claimant was entitled to a hearing. The only difference being the procedures for obtaining the hearing.

---

[4]Notably, Jackson *had* filed a verified claim with the court. The declaration filed by the People in support of the judgment itself stated that such a claim had been filed, but stated that no answer had been filed within the time prescribed by law.

"The Court finds that there is no void or voidable judgment."

On October 7, Jackson filed notice of appeal.

## III

### DISCUSSION

A. *The State's Disbursement of the Money in Question Does Not Deprive the Appellate Court of Jurisdiction*

■ The People contend that this court lacks jurisdiction to hear Jackson's appeal because the $8,921 in question has already been disbursed, Jackson having failed to obtain a stay of execution of the judgment pursuant to Code of Civil Procedure section 918. In other words, because the actual or constructive possession of the res ($8,921) by the court is the source of in rem jurisdiction, the loss of such possession by a disbursement of the res pursuant to court order destroys jurisdiction.

The People rely on the California case of *People* v. *$6,500 U.S. Currency* (1989) 215 Cal.App.3d 1542 [264 Cal.Rptr. 294]. In that case, the defendant had been arraigned on charges of selling cocaine. He executed an assignment to his attorney of money that had been seized from his automobile. The next day, the district attorney initiated forfeiture proceedings, pursuant to section 11470 et seq., against the money. The municipal court in which defendant had been arraigned ordered the money released to defendant's attorney. Ultimately in the criminal action there was a preliminary hearing and thereafter an information was filed in superior court. The superior court ordered the hearing in the forfeiture proceeding to be held at the same time as trial of the criminal charges. Defendant was convicted, and the superior court found that the People had proved that the subject money was used for a purpose which subjected it to forfeiture. It then entered judgment declaring the money forfeited to the People.

Defendant appealed, and the Court of Appeal reversed, holding that in rem jurisdiction exists in an action only when the res of the action is within the court's actual or constructive possession. Absent such possession, the court has no subject matter jurisdiction. It determined that the currency had been released, the People had failed to seek review of the release order, and the order had become final. "The forfeiture proceeding therefore became moot. [Citation.]" (215 Cal.App.3d at p. 1546.) The reviewing court further held that by filing a claim for the currency, defendant's attorney had not submitted himself to the jurisdiction of the court such that he could be ordered to repay the funds. (*Id.* at p. 1548.)

However, the facts of *$6,500 U.S. Currency* are distinguishable from the facts of this case, because the issue in *$6,500 U. S. Currency* was whether the *trial* court had jurisdiction to try the forfeiture matter in the first place in the absence of its possession of the res at the time of trial; here, the issue is whether, jurisdiction having been established for purposes of the hearing and judgment, the subsequent disbursement of the res pursuant to court order can deprive the *appellate* court of jurisdiction to hear the claimant's appeal.

As acknowledged by the People, the United States Supreme Court recently held that in an in rem forfeiture action, an appellate court is *not* divested of jurisdiction because the prevailing party has transferred the res from the district, given that the fictions of in rem forfeiture were developed primarily to expand the jurisdictional reach of the courts and to furnish remedies for aggrieved parties, and not to provide the prevailing party with a way of defeating its adversary's claim for redress. (*Republic Nat. Bank* v. *United States* (1992) 506 U.S. ___ [121 L.Ed.2d 474, 484, 113 S.Ct. 554, 559-560].)[5]

■ ▬ ■ ■ Although we are not bound by the United States Supreme Court's decision in *Republic Nat. Bank* v. *United States*, we find its analysis persuasive.[6] (See also (1) analysis in *U.S.* v. *One Lot of $25,721.00 in Currency* (1st Cir. 1991) 938 F.2d 1417, holding that in a currency forfeiture case, the government has subjected itself to the court's in personam jurisdiction, and that appellate jurisdiction is not extinguished despite the fact that the judgment has been executed and that the claimant failed to request a stay of execution or post a supersedeas bond; (2) *Nasir* v. *Sacramento County Off. of the Dist. Atty.* (1992) 11 Cal.App.4th 976, 993-995 [15 Cal.Rptr.2d 694], commenting on the criticisms of the " 'no *res*, no jurisdiction' " rule, and holding that the disposal of the res in the case before it did not deprive the trial court of jurisdiction to issue a writ of mandate; and (3) Note, *Appellate Jurisdiction for Civil Forfeiture: the Case for the Continuation of Jurisdiction Beyond the Release of the Res, supra,* 59 Fordham L.Rev. 679.)

---

[5]For an interesting discussion of the policies behind in rem jurisdiction, and why such policies favored the rule announced in *Republic Nat. Bank* v. *United States,* see Note, *Appellate Jurisdiction for Civil Forfeiture: the Case for the Continuation of Jurisdiction Beyond the Release of the Res* (1991) 59 Fordham L.Rev. 679.

[6]California courts are not bound by federal decisions, including those of the United States Supreme Court on nonfederal questions, but such decisions are instructive and entitled to great weight, particularly if a state's statute is derived from a federal statute. (9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, §§ 779-781, pp. 750-752.) Federal authorities construing federal forfeiture statutes are particularly persuasive in actions involving forfeiture proceedings under section 11470 et seq., because the Legislature amended the California forfeiture statutes to bring them in line with corresponding federal statutes. (*People* v. *Superior Court (Rishwain, Hakeem & Ellis)* (1989) 215 Cal.App.3d 1411, 1414, fn. 1 [264 Cal.Rptr. 28].)

We therefore conclude, as a matter of California law, that we have jurisdiction to hear Jackson's appeal even though the subject currency has been disbursed by a trial court order of which Jackson, the claimant, did not seek a stay of execution.

B.-D.*

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

## IV

### DISPOSITION

The order denying Jackson's motion to vacate the default judgment and set aside the default is reversed. Further, the judgment by default against Jackson is reversed and the cause is remanded to the trial court with directions that it set aside the default, set the People's "complaint" for a hearing and proceed accordingly, consistent with the views expressed in this opinion.

Ramirez, P. J., and Dabney, J., concurred.

---

*See footnote, *ante*, page 1226.