46 Cal.App.4th 1197 (1996)
RICHARD TRAVERSO, Plaintiff and Appellant,
v.
PEOPLE ex rel. DEPARTMENT OF TRANSPORTATION et al., Defendants and Respondents.
Docket No. C022206.
Court of Appeals of California, Third District.
June 27, 1996.
*1200 COUNSEL
Terry J. Traktman and Joseph A. Forest for Plaintiff and Appellant.
William M. McMillan, Brelend C. Gowan, Richard W. Bower and O.J. Solander for Defendants and Respondents.
OPINION
DAVIS, J.
Plaintiff Richard Traverso does business as ADCO Outdoor Advertising (ADCO). ADCO applied for a permit to place a billboard. Defendant Department of Transportation (Caltrans)[1] denied the application. ADCO unsuccessfully petitioned for a writ of traditional mandamus (Code Civ. Proc., § 1085) to overturn this determination. On appeal, ADCO maintains Caltrans and the trial court misconstrued the scope of the authority vested in Caltrans by the Outdoor Advertising Act (the Act) (Bus. & Prof. Code, § 5200 et seq. [undesignated section references will be to this code]) to require compliance with local zoning ordinances as an additional criterion for a state billboard permit.
We agree with ADCO that Caltrans may not condition state billboard licenses upon compliance with local zoning ordinances. Assuming Caltrans will comply in the future with our interpretation of its governing statute, we decline to reach ADCO's alternative argument that the policy under which Caltrans denied ADCO's application amounted to an unauthorized regulation promulgated in violation of the Administrative Procedure Act (Gov. Code, § 11340 et seq.). We reject the fallback argument by Caltrans that issuance of a writ of mandate would be an idle act in the present case. We deny ADCO's request for an award of attorney fees. (Id., § 800.) We thus shall reverse with directions.

*1201 FACTS
Given our disposition, the pertinent operative facts are few. In 1992, ADCO obtained a lease for property in Roseville located on the north side of Interstate 80 about a half-mile northeast of the Douglas Boulevard exchange. The property is zoned "PD23 Highway Commercial," a "business area" designation. In January 1995, ADCO filed an application with Caltrans for a permit to place a two-sided billboard on the property to face both directions of traffic.
Pamela Waters was the Caltrans employee who processed the application. As a part of her job, she regularly coordinated with local agencies responsible for zoning enforcement in order to determine if a proposed billboard would be in compliance with local zoning ordinances. In response to her inquiry, an employee of the Roseville Planning Department sent her a letter stating, "[T]he applicant is proposing to place a 20' tall, 300 square foot billboard.... [¶] Based on this information, this billboard would be considered an off-site sign. Section 17.12.010.I of the Roseville Sign ordinance specifically prohibits off-site signs. Please be advised that, as such, the City of Roseville does not permit off-site signs and would not issue a permit for the subject sign." Based on this letter and internal Caltrans policies,[2] Waters denied the permit application in May 1995. She sent ADCO a letter citing the Roseville ordinance and section 5229 as the basis for her action.
ADCO's attorney soon responded with a letter protesting that Caltrans "has no authority to deny an application for a permit on the grounds which you have stated." ADCO asserted it had complied with all the conditions of the Act. "Whether or not the City of Roseville might approve the location of the [billboard] is not relevant to issuance of a state permit." After three weeks without a reply, ADCO notified Caltrans it would be seeking an alternative writ.
Caltrans filed opposition to the alternative writ which appended correspondence purportedly sent to ADCO the previous day. This correspondence now cited section 5358 as a basis for requiring compliance with local zoning laws as a condition of issuing a permit. In its return to the writ, Caltrans asserted as an affirmative defense that it did not have a duty to issue a permit until ADCO obtained a permit from Roseville to place a billboard at the *1202 location, because the billboard was prohibited by local ordinance. Caltrans also requested judicial notice of Roseville's sign ordinances.
At the noticed hearing, the court denied the writ, citing section 5358 as interpreted in light of a regulation regularly promulgated by Caltrans. The court also stated the correspondence from the Roseville associate planner demonstrated that issuance of a writ would be an idle act. However, to accommodate ADCO's desire both to file a replication and challenge the internal Caltrans policies as unauthorized regulations, the court stated it would entertain a motion for reconsideration (Code Civ. Proc., § 1008). Before ADCO filed a motion, the court entered a judgment (which included an express provision purporting to allow ADCO to file a motion for reconsideration). Because the entry of judgment eliminated the opportunity to hear a motion for reconsideration (Eddy v. Sharp (1988) 199 Cal. App.3d 858, 863, fn. 3 [245 Cal. Rptr. 211]), the court deemed ADCO's subsequent motion as one to vacate the judgment (Code Civ. Proc., § 663), which it denied. ADCO appealed from the judgment and the postjudgment order.

ANALYSIS

I

A
To put the statutory interpretation argument posited by Caltrans in context, we must analyze section 5358 with respect to the Act as a whole. (Rideout Hospital Foundation, Inc. v. County of Yuba (1992) 8 Cal. App.4th 214, 219 [10 Cal. Rptr.2d 141].) We begin with an overview of the Act and a chronology of legislative actions. We address the substance of any changes pertinent to this appeal later in the discussion.
1933: The Legislature first enacted an uncodified statutory scheme for the regulation of off-premises billboards. (Stats. 1933, ch. 341, p. 938 et seq.)
1939: The Legislature codified these statutes as the Act. (Stats. 1939, ch. 32, § 1, p. 333; see Stats. 1939, appen., pp. 3275-3276.) It promptly amended the Act later in the session. (Stats. 1939, ch. 1121, pp. 3068-3070.)
In this initial scheme, "... permits for billboards were issued [under the Act] with little concern for considerations other than safety, structural stability, and public decency." (Traverso v. People ex rel. Department of Transportation (1993) 6 Cal.4th 1152, 1156 [26 Cal. Rptr.2d 217, 864 P.2d 488] [litigation unrelated to the present action].)
*1203 1964: The "Collier-Z'berg Act" amended and added a number of provisions to the Act. (Stats. 1965, First Ex. Sess. 1964, ch. 128, § 14, p. 397.)
1965: Congress substantially amended the Federal Aid Highway Act of 1958 and retitled it the Highway Beautification Act of 1965. (See §§ 5210, 5214.) The congressional purpose was "to provide for scenic development and road beautification of the federal-aid highway systems.... [¶] In general, the [federal] act seeks to eliminate outdoor advertising displays within 660 feet of the edge of any interstate or federal primary system highway. Toward this end, the [federal] act mandates a 10 percent cut in federal-aid highway funds to any state which fails to provide for `effective control' over the erection and maintenance of such displays." (People ex rel. Dept. of Transportation v. Naegele Outdoor Advertising Co. (1985) 38 Cal.3d 509, 515 [213 Cal. Rptr. 247, 698 P.2d 150]; see also Tahoe Regional Planning Agency v. King (1991) 233 Cal. App.3d 1365, 1380-1381 [285 Cal. Rptr. 335].)
1967: The Act was twice the focus of legislative action. First, the Legislature added an article to the Act, which "create[d] and define[d] a certificate of zoning compliance." (Legis. Counsel's Dig., Assem. Bill No. 582, 3 Stats. 1967 (Reg. Sess.) Summary Dig., ch. 1252, p. 5177.) Second, the Legislature responded to the federal requirement of "effective control" over billboards by amending portions of the Act. (Stats. 1967, ch. 1408, § 1, p. 3306.) This "greatly expand[ed] the state's regulatory authority over outdoor advertising by creating stricter standards for the [placing] ... of billboards... State regulation [now] extended to every mile of every major road in California with [an] emphasis ... not only on public safety and welfare, but also on protecting the public investment in California's highways and on aesthetic considerations...." (Traverso v. People ex rel. Department of Transportation, supra, 6 Cal.4th at pp. 1156-1157, citations omitted.)
1970: The Legislature repealed and reenacted the Act. (Stats. 1970, ch. 991, p. 1763 et seq.) This is significant chiefly because the provisions of the Act received their present numbering.
1983: The Legislature made the last major revision of the Act to date. The most important of the changes was the repeal of the article authorizing the zoning-compliance certificates. (Legis. Counsel's Dig., Assem. Bill No. 503, 4 Stats. 1983 (Reg. Sess.) Summary Dig., ch. 653, p. 223.)
After its 1970 reorganization, the Act contains generally applicable definitions and provisions in article 1. (§§ 5200-5231.) Article 2 (§§ 5250-5254) *1204 confers enforcement authority upon Caltrans. Article 3 (§§ 5270-5273) defines the areas subject to the Act. Article 4 establishes the licensing system for those wishing to engage in the billboard business. (§§ 5300-5303.) Article 5, repealed in 1983, governed the zoning-compliance certificates. (Former §§ 5320-5325.) Article 6 (§§ 5350-5366) describes the process for obtaining billboard permits. Substantive mandates for billboards appear in article 7. (§§ 5400-5419.) Special provisions for "landscaped freeways" (see § 5216) are contained in article 8. (§§ 5440-5443.5.) Article 9 (§§ 5460-5465) sets the penalties for violations of the Act. Finally, article 10 governs the collection of fees and fines under the Act. (§§ 5480-5486.)

B
(1a) The specific argument before us focuses on language in article 6. That article prohibits the placement of any billboard "within the areas affected by the provisions of this [Act]" without first securing a permit from Caltrans. (§ 5350.) All persons wishing to place billboards must apply for such permits. (§ 5351.) Section 5358 provides, "When the application [for a permit] is in full compliance with this [Act] and if the [billboard] will not be in violation of any other state law, the director ... shall, within 10 days after compliance and upon payment ... of the fee provided by this [Act], issue a permit to place the [billboard] for the remainder of the calendar year in which the permit is issued." (Italics added.)
Caltrans concedes ADCO is "in full compliance with this [Act]." However, it argues ADCO fails to satisfy the second prerequisite in section 5358 and therefore Caltrans has no duty to issue the permit. This argument stands or falls on the interpretation of the highlighted phrase, "any other state law." Caltrans asserts it must be interpreted as including local ordinances. As ADCO has not first obtained a permit from Roseville for placement of its billboard, Caltrans asserts the proposed billboard is in violation of Roseville's sign ordinance and thus "state law."
(2) Our beginning point is the language of the statute itself. If it is clear and unambiguous, we should not indulge in any effort to "interpret" it. (Rojo v. Kliger (1990) 52 Cal.3d 65, 73 [276 Cal. Rptr. 130, 801 P.2d 373].) (1b) We find that the expression "any other state law" does not, on its face, embrace local ordinances. A state law is simply not a local ordinance. However, because we accord "respectful but nondeferential" weight to an agency's interpretation of its controlling statutes (State Compensation Ins. Fund v. Brown (1995) 32 Cal. App.4th 188, 199 [38 Cal. Rptr.2d 98]), we shall attempt to follow the argument presented by Caltrans in support of its interpretation.

*1205 C
The first facet reflects the common law. Under a former provision of the Penal Code enacted in 1872, the unlicensed conduct of a business subject to licensing "`by any law of this state'" was a misdemeanor. (Ex parte Christensen (1890) 85 Cal. 208, 210-211 [24 P. 747], italics added.)[3] As construed judicially, the highlighted phrase included local ordinances imposing licensing requirements. (Id. at p. 211; In re Lawrence (1886) 69 Cal. 608, 611 [11 P. 217]; In re Johnson (1920) 47 Cal. App. 465, 467 [190 P. 852]; see People v. Williams, supra, 207 Cal. App.2d at p. Supp. 915.) The Supreme Court now broadly interprets this precedent as holding that local ordinances are deemed to be included within the phrase "the law" unless expressly excluded. (People ex rel. Deukmejian v. County of Mendocino (1984) 36 Cal.3d 476, 483, 486 [204 Cal. Rptr. 897, 683 P.2d 1150] [interpreting statute conditioning issuance of permit on compliance with "the law and regulations"].) As former Justice Richardson has therefore noted in dissent, "... although the term `law' generally refers to state statutes, as distinguished from city `ordinances,' that usage is not inflexible." (Weekes v. City of Oakland (1978) 21 Cal.3d 386, 403 [146 Cal. Rptr. 558, 579 P.2d 449] [interpreting phrase "as prescribed by law"].)
The second facet of the defendant's argument reflects an administrative interpretation it gave to the expression "state law." Caltrans promulgated regulations in 1974 pursuant to the authority conferred generally by sections 5250-5251 (in the administrative provisions of article 2) and more specifically by section 5415 (in the provisions of article 7 substantively regulating billboards). (Cal. Code Regs., tit. 4, § 2300, Note and History.) These provisions apply to billboards along so-called "bonus segments" of interstate highways.[4] Under the general definitions to this set of regulations, Caltrans defined "state law" as meaning "a provision of the Constitution or statutes of this State, or an ordinance, rule, or regulation enacted ... by an agency or political subdivision of the State. ..." (Id., § 2301, subd. (q), italics added.)
The final facet frames the 1983 amendment of section 5358. The Legislature reenacted the phrase "any other state law" in the course of making other minor changes in wording. (Cf. Stats. 1970, ch. 991, § 2, p. 1771; Stats. 1983, ch. 653, § 12, p. 2582.)[5]
Caltrans draws together these disparate sources as follows. Following the amendment of the Act late in the 1939 session, the predecessor to section *1206 5358 first used the phrase "any other State law." (Stats. 1939, ch. 1121, § 10, p. 3070.) Based on the presumption of a legislative intent to incorporate judicial construction of similar language (City of Long Beach v. Marshall (1938) 11 Cal.2d 609, 620 [82 P.2d 362]), Caltrans argues that under the authority discussed above the Legislature's failure to expressly exclude local ordinances had the effect rendering the phrase "state law" ambiguous. Caltrans then argues this court must apply the presumption that the Legislature intended to incorporate the 1974 administrative interpretation of the phrase "state law" when it reenacted that language without change as part of section 5358 in 1983. (Wotton v. Bush (1953) 41 Cal.2d 460, 469 [261 P.2d 256].) As we shall demonstrate, neither presumption avails Caltrans.

D
(3) First, "before we may presume the Legislature intended to incorporate a judicial ... interpretation, it is necessary for the Legislature ... [to] use language identical to that which had been interpreted." (Troy Gold Industries, Ltd. v. Occupational Safety & Health Appeals Bd. (1986) 187 Cal. App.3d 379, 389 [231 Cal. Rptr. 861].) (1c) The judicial interpretation which Caltrans would incorporate into the statute involved the phrase "any law of this state." However, the expression actually used in the statute is "any state law," a different formulation. Caltrans asserts adding "state" before "law" is not a significant difference. Rather than engage in a needless listing of the different connotations we can derive from "law of this state" as opposed to "state law," it is sufficient for us to note the expressions are not identical, meaning Caltrans cannot invoke the presumption. As a result, the language lacks any gloss of ambiguity on the question of whether "local ordinances" are included in its ambit.
As for the other presumption on which Caltrans would rely, there is no evidence that its administrative definition of "state law" in the context of regulating billboards along bonus segments is well established in the industry such that "numerous transactions have been entered into in reliance thereon, and... [can] be invalidated only at the cost of major readjustment and extensive litigation." (Whitcomb Hotel, Inc. v. Cal. Emp. Com. (1944) 24 Cal.2d 753, 757 [151 P.2d 233, 155 A.L.R. 405].) More importantly, there is no evidence that this definitional regulation has ever come to the attention of the Legislature. (Pacific Greyhound Lines v. Johnson (1942) 54 Cal. App.2d 297, 303 [129 P.2d 32].) (4) Furthermore, where an agency's interpretation alters or enlarges the terms of a statute, the interpretation "does not *1207 govern the interpretation of [the] statute, even though the statute is subsequently reenacted without change." (Whitcomb Hotel, Inc., supra, 24 Cal.2d at pp. 757-758.)
(1d) One must also bear in mind these are merely presumptions. They are not irrebuttable. Stronger evidence elsewhere of legislative intent can thus overcome them. We find such stronger evidence from the direct actions of the Legislature in connection with section 5358 (and its predecessor) and other portions of the Act.
When initially enacted, the predecessor to section 5358 provided, "If such [permit] application is in full compliance with the provisions of this act and if such [billboard] will not be in violation of any law or ordinance, the director ... shall, within ten (10) days after the filing of such application and upon payment ... of the fee hereinafter specified, issue a permit to place ... such [billboard] for the remainder of the calendar year in which such permit is issued." (Stats. 1933, ch. 341, § 6, p. 941, italics added.) When codified in 1939, the statute provided, "5267. If the application is in full compliance with the provisions of this [act] and if the ... [billboard] will not be in violation of any law or ordinance, the director... shall, within ten days after the filing of the application and upon payment ... of the fee provided by this [act], issue a permit to place the [billboard] for the remainder of the calendar year in which the permit is issued." (Stats. 1939, ch. 32, § 1, p. 336, italics added.) However, as amended later in the session, the statute then provided, "If the application is in full compliance with the provisions of this [act] and if the [billboard] will not be in violation of any other State law, the director ... shall, within ten days after the filing of the application and upon payment ... of the fee provided by this [act], issue a permit to place the [billboard] for the remainder of the calendar year in which the permit is issued." (Stats. 1939, ch. 1121, § 10, p. 3070, italics added.)[6]
Thus, the Legislature expressly deleted ordinances from the ambit of the statute. (5) "The sweep of [a] statute should not be enlarged by insertion of language which the Legislature has overtly left out." (People v. Brannon (1973) 32 Cal. App.3d 971, 977 [108 Cal. Rptr. 620].) (1e) The argument by Caltrans, resting on inferences and presumptions, would require us to characterize the 1939 amendment as an idle act.
Caltrans argues the addition to the Act of the predecessor to section 5229 as part of the 1964 Collier-Z'berg Act had the effect of making its authority *1208 to issue permits "responsive" to local zoning ordinances, and thus section 5229 "requires" this court to interpret section 5358 as including compliance with local ordinances as a prerequisite to issuing a permit. This is not supported by the language of the statute. As enacted, it provided, "5288.6 The provisions of this [Act] shall not be construed to permit a person to place or maintain in existence ... any [billboard] prohibited by law or by any ordinance of any city ... [or] county...." (Stats. 1965, First Ex. Sess. 1964, ch. 128, § 7.5, pp. 395-396.)[7] This statute, however, neither requires Caltrans to be "responsive" to local ordinances nor makes obtaining a local permit a precondition to a state permit. Rather, it simply precludes using a state permit as a trump card over local zoning ordinances.[8] This was but the first of several legislative efforts to define the interrelation of concurrent local and state regulation of billboards. In the second 1967 amendments, the Legislature added provisions declaring that the state billboard standards were minimums, permitting localities to enforce zoning regulations equal to or greater than the state standards, and authorizing localities to impose permit requirements for billboards. (Stats. 1967, ch. 1408, § 28.5, p. 3316.)[9] Then, as part of the 1983 amendments, the Legislature included a reciprocal provision to section 5229 within section 5230 precluding localities from permitting the placement or maintenance of billboards in violation of the Act, and further emphasized the independent natures of state and local permit processes by adding explicitly to section 5231 a provision that localities could impose permit requirements "in addition to those imposed by this [Act]." (Stats. 1983, ch. 653, §§ 5, 6, p. 2581, italics added.) But these general provisions nowhere suggest that an applicant must first comply with local ordinances before seeking a state permit.
The history of the article establishing certificates of zoning compliance further supports our interpretation of section 5358. Its addition to the Act as article 4.5 in 1967 was the first explicit link between the state process for billboard permits and local zoning ordinances. Former section 5251 provided, "When requested to do so pursuant to a resolution adopted by the *1209 governing body of a city... [or] county ... the director shall require the presentation of a certificate of zoning compliance ... before issuing a permit pursuant to [the predecessor to present article 6 (present § 5350 et seq.)] in respect to any [billboard] to be placed within any area subject to the zoning regulations of such city ... [or] county...." (Stats. 1967, ch. 1252, § 1, pp. 3035-3036, italics added.)[10] In furtherance of this provision, the permit process then provided that no permit application would even be accepted unless accompanied by at least an application for a certificate of zoning compliance in requesting jurisdictions. (Stats. 1967, ch. 1252, § 2, p. 3037.) An analysis by the Legislative Counsel also expressed the opinion that prior to this 1967 addition, the Act did not condition permits on compliance with local ordinances: "A.B. 1666 makes nonviolation of local ordinances, as well as nonviolation of state laws, a condition for the issuance ... of a permit for [a billboard]." (Italics added.)[11] However, in 1983 the Legislature repealed the certification article. (Legis. Counsel's Dig., Assem. Bill No. 503, 4 Stats. 1983 (1983 Reg. Sess.) Summary Dig., p. 223.) While Caltrans argues the enactment and repeal of this article "did not clarify the overall meaning of `state law' as used in section 5358 of the Act," the interpretation of "state law" in section 5358 championed by Caltrans would render these legislative actions meaningless. If "any state law" in the 1939 enactment included compliance with local ordinances as a condition of state permits, it would have been a superfluity to add the article requiring compliance certificates and a nullity to repeal the article.[12] This would be entirely contrary to the respect we are to accord legislative actions.
*1210 Caltrans suggests in abbreviated fashion that an impermissible "nonuniform" application of section 5358 would result (citing Cal. Const., art. IV, § 16)[13] if we exclude local ordinances from section 5358's ambit, because its regulations will still apply to bonus segments. Our abbreviated response is to remind Caltrans the tail may not wag the dog: to the extent its regulations might be involved in the issuance of billboard permits on bonus segments, it must conform them to the statute.
We thus conclude Caltrans is not authorized by its governing statutes to condition the issuance of a billboard permit on demonstrated compliance with local zoning ordinances. As Caltrans does not suggest ADCO is otherwise in violation of state law, ADCO has satisfied the conditions for issuance of a permit. The trial court consequently erred in denying the writ on this basis.

II
(6) We now turn to the fallback argument urged by Caltrans. Based solely on the letter from the employee of the Roseville Planning Department which asserted the proposed billboard was prohibited under the Roseville Sign Ordinance (the Ordinance), Caltrans asserts it would be an idle act to issue a writ commanding it to grant ADCO's permit application, which is a permissible ground for denying a writ. (Boyne v. Ryan (1893) 100 Cal. 265, 267 [34 P. 707]; Genser v. McElvy (1969) 276 Cal. App.2d 709, 711 [82 Cal. Rptr. 521].)
Caltrans does not make clear the relevance of the "idle act" doctrine to the present matter, where the sole question before the trial court was whether ADCO was entitled to a permit under state law. After all, it is for ADCO to decide whether it wishes to obtain a possibly worthless permit. In any event, Caltrans has failed to prove ADCO will be unable to obtain a permit under the Ordinance.[14]
The procedure for obtaining a sign permit requires the review of the application by the director of the planning department (Ord., § 17.08.130(A)); if the director denies the application, the applicant may appeal to a public hearing by the design review commission (id., § 17.08.510); and, if unhappy *1211 with the decision of the design review commission, the applicant may then appeal to a public hearing before the Roseville City Council (id., § 17.08.520) and presumably thereafter seek some form of judicial review. It is true the Ordinance declares, "Except as otherwise provided by this Title, no person shall erect, construct, or maintain any off-site sign" (id., § 17.12.010(I)) and recites that no variances will be granted for off-site signs (id., § 17.08.410). However, for Caltrans to establish that any resort to this application and appeal procedure would be futile, there would have to be evidence that those responsible for making the determinations had expressed an affirmative opinion regarding the merits of this specific case. (Cf. Sea & Sage Audubon Society, Inc. v. Planning Com. (1983) 34 Cal.3d 412, 418 [194 Cal. Rptr. 357, 668 P.2d 664] [standard for plaintiff avoiding exhaustion of administrative remedies].) The informal opinion of an employee of the planning department does not satisfy this standard. Even if we assume the director and the design review board will not depart from the Ordinance, we have no basis for determining the action of the city council (which, as Roseville's legislative body, is free to fashion an exception), or whether there might be any meritorious judicial challenge to the Ordinance itself.
Consequently, there is no basis for the trial court's conclusion that issuance of the writ would be an "idle" act. We therefore shall reverse the judgment with directions.

III
(7) ADCO argues it is entitled to its attorney fees expended in litigating this case in the trial court and on appeal pursuant to Government Code section 800.[15] The denial of a permit is not an "administrative proceeding" within the meaning of the statute because there is no hearing involved. (Ferris v. Los Rios Community College Dist. (1983) 146 Cal. App.3d 1, 11 [194 Cal. Rptr. 16].) We thus need not consider ADCO's argument that Caltrans behaved in an arbitrary and capricious manner in denying the permit.

DISPOSITION
The judgment is reversed with directions to issue a writ of mandate directing Caltrans to grant ADCO's application for a billboard permit. *1212 ADCO's request for attorney fees is denied. ADCO shall recover costs of appeal.
Puglia, P.J., and Raye, J., concurred.
A petition for a rehearing was denied July 23, 1996.
NOTES
[1] Caltrans employees are also named defendants in their official capacities. We shall refer only to Caltrans as the defendant.
[2] Because we do not reach the issue of whether these internal policies constituted unauthorized regulations, we need not detail the circumstances to which the policies responded nor quote the memoranda which detail the policies.
[3] The provisions of this statute are currently located in section 16240. (People v. Williams (1962) 207 Cal. App.2d Supp. 912, 915 [24 Cal. Rptr. 922].)
[4] These are segments for which Caltrans acquired rights-of-way after June 1956. (§ 5204.)
[5] Prior to amendment, the statute provided, "If the application [for a permit] is in full compliance with the provisions of this [act] and if the [billboard] will not be in violation of any other state law, the director ... shall, within 10 days after the filing of the application and upon payment by the applicant of the fee provided by this [act], issue a permit to place the [billboard] for the remainder of the calendar year in which the permit is issued."
[6] The statute then remained unchanged until the 1970 renumbering and the earlier-noted 1983 minor revision. (See fn. 5, ante.)
[7] The only change in the statute to date was its renumbering as section 5229 in 1970, when the Legislature included it among the general provisions of article 1. (Stats. 1970, ch. 991, § 2, p. 1767.)
[8] We note in passing that under our obligation to construe a legislative scheme as a whole (Sanford v. Garamendi (1991) 233 Cal. App.3d 1109, 1119 [284 Cal. Rptr. 897]), we could take account of usage in this general provision of the expression "law or ordinance" to conclude that "law" as used in the Act does not embrace ordinances. In light of the more direct expressions of legislative intent we pursue in the text, and because "`where the occasion demands it "the same words may have different constructions to effectuate the intention" of [an] act'" (Bethlehem Pacific Coast Steel Corp. v. Franchise Tax Board (1962) 203 Cal. App.2d 458, 463 [21 Cal. Rptr. 707]), we merely identify this line of inquiry.
[9] The 1970 reorganization renumbered these provisions as sections 5228, 5230, and 5231 without change.
[10] The 1970 reorganization renumbered article 4.5 as article 5, sections 5320-5325. (Stats. 1970, ch. 991, § 2, pp. 1769-1770.)
[11] ADCO requested we take judicial notice of excerpts of this analysis appended to its reply brief. Having obtained the entirety of the analysis from the state archives, we grant the request. (Post v. Prati (1979) 90 Cal. App.3d 626, 634 [153 Cal. Rptr. 511].) Although we do not wish to delve deeply into the legislative maneuverings of the 1967 session, we need to provide a brief context for the analysis. In February 1967, Assemblyman Z'berg introduced Assembly Bill No. 582, which became law as chapter 1252 of the 1967 Statutes, adding the certification procedure to the Act. In March 1967, Senator Collier introduced Senate Bill No. 636, which became law as chapter 1408 of that year, the amendments conforming the Act to federal law. On April 6, 1967, Assemblyman Z'berg also introduced Assembly. Bill No. 1666, which both incorporated the provisions of Assembly. Bill No. 582 and overlapped the subjects of Senate Bill No. 636. The analysis appeared in a April 19, 1967, letter from Legislative Counsel to Assemblyman Z'berg discussing the distinctions between Assembly Bill No. 1666 and Senate Bill No. 636.
[12] In addition, the interpretation of section 5358 urged by Caltrans would also render section 5366  added in 1983 at the same time as the repeal of article 5  superfluous. It provides, "The issuance of a permit pursuant to this [Act] does not allow any person to erect an advertising display in violation of any ordinance of any city... [or] county...." This reiterates section 5229's general concern with concurrent jurisdiction in the specific context of permit issuance. There would be no need for this caveat if one cannot obtain a state permit without first complying with local ordinances.
[13] The cited section provides, "(a) All laws of a general nature have uniform application. [¶] (b) A local or special statute is invalid in any case if a general statute can be made applicable."
[14] We take judicial notice at the request of ADCO of the Ordinance (which, as noted, had been judicially noticed by the trial court at the request of Caltrans). (Evid. Code, § 459, subd. (a).)
[15] In pertinent part the statute provides, "In any civil action to appeal or review the award, finding, or other determination of any administrative proceeding under this code or under any other provision of state law ..., where it is shown that the award, finding, or other determination of the proceeding was the result of arbitrary or capricious action or conduct by a public entity ..., [a prevailing] complainant... may collect reasonable attorney's fees...." (Italics added.)