[No. H028841. Sixth Dist. June 28, 2006.]

SANTA CLARA VALLEY TRANSPORTATION AUTHORITY, Plaintiff and Respondent, v.
JOHN M. REA, as Director, etc., et al., Defendants and Appellants;
AMERICAN FEDERATION OF STATE, COUNTY, AND MUNICIPAL EMPLOYEES, LOCAL 101, AFL-CIO, Real Party in Interest and Appellant.

1304

COUNSEL

Vanessa L. Holton and A. Roger Jeanson for Defendants and Appellants.

Beeson Tayer & Bodine, Sheila K. Sexton and Teague P. Paterson for Real Party in Interest and Appellant.

Suzanne B. Gifford and Richard A. Katzman for Plaintiff and Respondent.

OPINION

**PREMO, Acting P. J.—**

## I.  INTRODUCTION

The issue in this case is whether state law requires the Santa Clara Valley Transportation Authority (VTA) to bargain with a certain labor union when the bargaining unit the union represents includes supervisory and management personnel. Resolution of the issue turns upon interpretation of two arguably contradictory sections of the Public Utilities Code.[1] Section 100301 states that all questions relating to the collective bargaining rights of VTA employees are to be resolved by application of relevant provisions of the federal Labor Management Relations Act of 1947 (29 U.S.C. § 141 et seq.) (LMRA). Section 100309 applies to a subset of employees who transferred to VTA from other public entities in 1995 as a result of reorganizing legislation. This section requires VTA to recognize the employee organizations that represented the transferring employees immediately prior to their employment by VTA. The apparent contradiction between the two code sections is that under the LMRA, an employer may not be compelled to bargain with supervisors and managers, but section 100309 appears to require VTA to bargain with a group of supervisory and managerial employees that transferred to VTA in 1995.

We conclude that section 100309, the more recent and more specific of the code sections, granted collective bargaining rights to the entire subset of employees involved in the 1995 reorganization regardless of their position in the employment hierarchy.

## II.  THE STATUTORY CONTEXT

Analysis of the problem before us requires reference to three separate labor relations schemes. First, there is VTA's scheme. In 1969, the Legislature

---

[1] Hereafter, all unspecified section references are to the Public Utilities Code.

passed the Santa Clara Valley Transportation Authority Act (§ 100000 et seq.) (the Act), which created the transit district now known as VTA. (See § 100002.) The Act is one of a number of different acts governing transit districts around the state. (See, e.g., §§ 25051 et seq. [Alameda-Contra Costa Transit District], 28850 et seq. [San Francisco Bay Area Rapid Transit District], 30750 et seq. [Los Angeles County Metropolitan Transportation Authority], 40120 et seq. [Orange County Transit District], 98160 et seq. [Santa Cruz Metropolitan Transit District].) Each of the transit acts contains its own labor relations provisions.

Section 100300 is the Act's grant of collective bargaining rights: "Employees shall have the right to self-organization, to form, join or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection." Section 100302 provides: "Whenever a majority of the employees employed by the district in a unit appropriate for collective bargaining indicate a desire to be represented by a labor organization and upon determining, as provided in Section 100301, that said labor organization represents at least a majority of the employees in the appropriate unit, the board and the accredited representative of employees shall bargain in good faith and make all reasonable efforts to reach agreement on the terms of a written contract governing wages, hours and working conditions." Subsequent sections provide for mediation and arbitration and referral to the State Conciliation Service for resolution of contract disputes. (§§ 100304–100306.)

Questions of representation are resolved by reference to the LMRA. Specifically, section 100301 provides: "Any question which may arise with respect to whether a majority of employees in an appropriate unit desire to be represented by a labor organization shall be submitted to the Director of the Department of Industrial Relations [DIR].[2] In resolving such questions of representation including the determination of the appropriate unit or units, petitions, the conduct of hearings and elections, *the [DIR] shall apply the relevant federal law and administrative practice developed under the [LMRA (29 U.S.C.A. § 141 et seq.)]* and for this purpose shall adopt appropriate rules and regulations." (Italics added.) The Act does not define the term "employee."

The LMRA is the comprehensive federal labor law, which, by its terms, is applicable only to labor relations in the private sector. The LMRA defines

---

[2] Several persons have served as director, or acting director, of the Department of Industrial Relations during the evolution of this case. Respondent John M. Rea is the most recent. Hereafter, our reference to the DIR is to the person serving as director during the relevant time period.

"employee" as "any employee" except, among other things, any individual "employed as a supervisor" and any individual employed by someone not defined as an employer. (29 U.S.C. § 152(3).) The LMRA further provides that "no employer subject to this subchapter shall be compelled to deem individuals defined herein as supervisors as employees for the purpose of any law, either national or local, relating to collective bargaining." (29 U.S.C. § 164(a).) Managers are also excluded from the rights granted under the LMRA. (*NLRB v. Bell Aerospace Co.* (1974) 416 U.S. 267 [40 L.Ed.2d 134, 94 S.Ct. 1757].) VTA is not an employer under the terms of the LMRA because public entities are not "employers" within the meaning of the federal law. (29 U.S.C. § 152(2).) Application of the LMRA in this case comes about solely as a result of the directive in section 100301.

The third set of labor relations laws pertinent to our analysis is the Myers-Milias-Brown Act (Gov. Code, § 3500 et seq.) (MMBA), which is a state law that defines the collective bargaining rights of public employees. The MMBA definition of "public employee" includes supervisory and management employees. (*Organization of Deputy Sheriffs v. County of San Mateo* (1975) 48 Cal.App.3d 331, 338 [122 Cal.Rptr. 210]; *Santa Clara County Counsel Attys. Assn. v. Woodside* (1994) 7 Cal.4th 525, 537 [28 Cal.Rptr.2d 617, 869 P.2d 1142]; Gov. Code, § 3501, subd. (d).) Although the MMBA applies generally to local public entities, the Act expressly provides that the MMBA does not apply to VTA. (§ 100307, subd. (a).)

### III.  BACKGROUND

#### A.  *History of VTA*

VTA was formed to take over the operation of public transportation functions that had historically been provided by private companies. When it was first created, VTA was primarily an operating entity. Its employees were bus drivers, dispatchers, mechanics, and maintenance personnel. Support services such as management, administration, and clerical services were provided by employees of the County of Santa Clara or by the Santa Clara County Congestion Management Agency (collectively, county employees).

In 1994, the Legislature amended the Public Utilities Code, consolidating all transit functions under the VTA umbrella, which meant that the county employees who had been providing services to VTA would become employees of VTA instead. As part of the reorganization, the Legislature passed sections 100308 and 100309, which preserved benefits and rights that the county employees had earned and enjoyed while employed by the county. Among other things, section 100309 required VTA to recognize "those employee organizations which served as the recognized representatives of the

former county employees described in Section 100308 immediately prior to their employment by [VTA]" and to "observe all applicable provisions" of existing labor contracts for the remainder of the term of each such contract.

The transfer of employees took place on January 1, 1995. At least two employee organizations represented the county employees at the time: Service Employees International Union Local 715 (SEIU) and County Employees Management Association (CEMA). The group of employees represented by CEMA was identified as the supervisory-administrative bargaining unit. This unit included employees classified as supervisors or managers.

After the transfer was accomplished, the union that had been representing the original VTA employees, the Amalgamated Transit Union Division 265 (ATU), complained that the transferred employees should be part of the ATU bargaining unit. VTA filed petitions with the DIR, seeking a declaration of its obligations to recognize and bargain with each of the three labor organizations and to resolve a dispute over "which of the Unions is entitled to be the exclusive bargaining representative of which [VTA] employees." The consolidated petitions became case No. 95-1495.

In the decision and award in case No. 95-1495, the DIR concluded that when the Legislature passed the reorganizing legislation, it intended to maintain the status quo with respect to existing labor relationships so that the unions representing the county employees would continue to represent them. Furthermore, the DIR decided that even though section 100309 required VTA to honor the existing labor agreements only until those agreements expired, it required VTA to continue to recognize and bargain with the representatives of the employee organizations (SEIU and CEMA) after expiration of the existing agreements.

The DIR defined the CEMA-represented bargaining unit as: "All classified and unclassified employees in the coded classifications, and the positions held by such employees, in the supervisory-administrative bargaining unit, who transferred to the District effective as of January 1, 1995, as a result of the statutory reorganization mandated by Assembly Bill 2442 and who, prior to the transfer, held positions covered by a labor agreement in effect between [CEMA] and the County of Santa Clara."

B. *The Present Controversy*

After the transfer, VTA recognized and bargained with CEMA as the representative of the supervisory-administrative unit and entered into labor agreements with it. The most recent agreement between VTA and CEMA expired on June 8, 2003. In March 2003, the American Federation of State,

County and Municipal Employees, Local 101, AFL-CIO (AFSCME) petitioned the DIR to certify it as the representative of the supervisory-administrative bargaining unit. In April 2003, and again in August, VTA filed petitions requesting clarification of the existing bargaining unit. VTA wanted to exclude all supervisors and managers, leaving only rank-and-file employees in the unit. According to VTA, the unit included approximately 41 managers, 181 supervisors, and 44 rank-and-file employees. VTA's petitions were based upon its contention that under the LMRA, it could not be compelled to bargain collectively with supervisory or managerial personnel. (29 U.S.C. § 152(3); 29 U.S.C. § 164(a); *NLRB v. Bell Aerospace Co., supra,* 416 U.S. 267.) The DIR dismissed both petitions without prejudice, citing National Labor Relations Board (NLRB) regulations that precluded entertaining a clarification petition when a question of representation was pending.

The DIR appointed a hearing officer and set a hearing to consider AFSCME's petition for certification as the unit's bargaining representative. The DIR instructed the hearing officer to determine "whether an election is to be held, and, if so, the appropriate unit or units within which such election shall be held and the categories of employees who shall be eligible to vote in such unit or units."

VTA's position at the hearing was the same as its position in the dismissed unit clarification petitions: The hearing officer should exclude the supervisory and managerial employees from its determination of the appropriate unit because, under the LMRA, VTA was not required to bargain with supervisors or managers. VTA also argued that it was an unfair labor practice to allow a unit containing rank-and-file employees to be dominated by supervisors and managers, and for that reason as well, the supervisors and managers should be excluded. There was no evidence that the job descriptions or responsibilities of the employees in the supervisory-administrative unit were any different than they were prior to the 1995 transfer. Indeed, the parties stipulated that the unit described in AFSCME's petition was the same unit that had been organized for collective bargaining purposes since at least 1974, and was the same supervisory-administrative unit described by the DIR in case No. 95-1495.

The hearing officer issued a proposed decision and order in which she concluded that an election should be held and that the appropriate unit was the unit the DIR defined in case No. 95-1495. The DIR adopted the proposed decision, specifying that section 100309 was the basis for concluding that the existing bargaining unit was the appropriate unit within which to hold the election. The election was held in March 2004. The employees were offered the choice of CEMA, AFSCME, or no representation. The employees rejected CEMA and elected AFSCME as their exclusive bargaining representative.

VTA filed a petition for writ review, seeking, in substance, reversal of the DIR's decision ordering an election to be held within the existing bargaining unit. VTA's petition named the DIR as respondent and CEMA and AFSCME as real parties in interest.[3] The superior court granted the petition. The court concluded that "the DIR acted in excess of its jurisdiction by failing to apply relevant federal law, including the express statutory declaration in [29] U.S.C. §§ 152 and 164 [exempting supervisors from bargaining rights under the LMRA], and by making findings unsupported by substantial evidence in determining AFSCME's certification petition and the matters at issue." The court reasoned that although sections 100308 and 100309 require VTA to grant recognition to the representative of the transferring employees, nothing in those sections "expressly refers to supervisors or managers, and nothing in the legislation presupposes [that] any transferring unit of employees is an appropriate unit for unit determinations." The judgment directed the clerk to issue a peremptory writ of administrative mandate instructing the DIR to set aside its final order and reconsider its action in light of the court's decision. The DIR and AFSCME appeal from the judgment.

## IV. DISCUSSION

### A. *Collateral Estoppel*

Before proceeding to the substantive issue, we first dispose of appellants' contention that VTA is estopped from challenging the composition of the bargaining unit because the DIR had defined the unit five years earlier, in case No. 95-1495.

Collateral estoppel precludes relitigation of issues argued and decided in prior proceedings only if, among other things, the issue sought to be precluded from relitigation is identical to that decided in a former proceeding. (*Pacific Lumber Co. v. State Water Resources Control Bd.* (2006) 37 Cal.4th 921, 943 [38 Cal.Rptr.3d 220, 126 P.3d 1040].) The party asserting the doctrine has the burden to prove that the doctrine applies. (*Ibid.*)

In the present case, there is no record of the former proceeding other than the final and interim decisions. It is true that one of the interim decisions notes that there remained to be decided the question of "whether post-reorganization positions held by true managers and supervisors, who are exempt under LMRA standards, can be declared to be within a statutorily recognized bargaining unit." Although one might surmise that the issue was decided affirmatively because the DIR ultimately identified the existing unit

---

[3] VTA's petition was actually filed as a cross-petition in a case first brought by CEMA. CEMA ultimately dismissed its complaint. CEMA is not a party to this appeal.

as appropriate, given the incompleteness of the record we cannot tell to what extent the issue was actually litigated. Accordingly, appellants have not carried their burden and we cannot apply collateral estoppel in this case.

## B. *The Arguments of the Parties*

Turning now to the substance of the appeal, we first describe the various arguments advanced by the parties.

AFSCME argues that the Act as a whole extends collective bargaining rights to supervisors. AFSCME points out that under the LMRA, the term "employee" expressly excludes supervisors (29 U.S.C. § 152(2)) but the Act does not contain the same definition. In fact, there is no definition of "employee" in the Act. AFSCME maintains that since the Act does not specify otherwise, it must be read to extend self-organization and collective bargaining rights to all VTA employees, supervisory as well as rank and file. Thus, although section 100301 requires the DIR to apply "relevant" federal law to questions of representation, the portion of the LMRA excluding supervisory employees is not "relevant" to questions of representation in this or any other case involving VTA.

The DIR contends that the LMRA is not relevant to the narrower question of whether VTA must bargain collectively with supervisors and managers in the bargaining unit previously represented by CEMA. According to the DIR, we need not consider whether the Act extends bargaining rights to supervisors generally, since section 100309 by itself controls resolution of the issue.

VTA's position, which the trial court adopted, is that since the Act requires the DIR to apply the LMRA to questions of representation, and since the LMRA expressly exempts supervisors from the rights granted under that act, VTA may never be compelled to bargain with a unit containing supervisory or management employees.[4]

---

[4] As an alternative basis upon which to affirm the judgment, VTA argues that the existing bargaining unit contains a mix of supervisory and rank-and-file employees and that such a "mixed unit" is unlawful regardless of the operation of sections 100308 and 100309. But a mixed unit is not unlawful per se. (Cf. *Mon River Towing, Inc. v. NLRB* (9th Cir. 1969) 421 F.2d 1, 8.) Determining the appropriateness of a mixed unit requires examination of the actual composition of the bargaining unit. (*Newhouse Broadcasting Corp. v. Surratt* (1972) 198 N.L.R.B. 342, 343.) This factual issue was not litigated below. The matter was argued and submitted as the purely legal question of whether the Act required VTA to recognize and bargain with the supervisory-administrative unit. Accordingly, there is no basis in the record to support VTA's alternative contention and we do not consider it.

*C. The Issue*

The parties' arguments boil down to a single substantive issue: Under the undisputed facts of this case, does section 100309 require VTA to recognize and bargain with the representative of the supervisory-administrative unit even though that unit includes employees classified as supervisors and managers?

Because we conclude that section 100309 requires VTA to bargain with the existing unit, we need not reach the broader issue of whether, as a general matter, section 100300 extends collective bargaining rights to supervisory and managerial personnel.

*D. Standard of Review*

The operative pleading is VTA's first amended cross-petition for writ of certiorari or, alternatively, for writ of mandamus, or, alternatively, for writ of administrative mandamus. The superior court treated the petition as one for administrative mandamus. The parties do not challenge this decision and we find it to be appropriate.

"Judicial review of most public agency decisions is obtained by a proceeding for a writ of ordinary or administrative mandate. (Code Civ. Proc., §§ 1085, 1094.5.) The applicable type of mandate is determined by the nature of the administrative action or decision. [Citation.] Usually, quasi-legislative acts are reviewed by ordinary mandate and quasi-judicial acts are reviewed by administrative mandate." (*McGill v. Regents of University of California* (1996) 44 Cal.App.4th 1776, 1785 [52 Cal.Rptr.2d 466].) There are subtle differences between the scope of judicial review applied to ordinary mandamus and that used for administrative mandamus. (*Bunnett v. Regents of University of California* (1995) 35 Cal.App.4th 843, 849 [41 Cal.Rptr.2d 567].) Regardless of the writ involved, however, where the facts are undisputed, the reviewing court faces a question of law. "On questions of law arising in mandate proceedings, we exercise independent judgment." (*Ibid.*) In those circumstances, the trial and appellate courts perform the same function. (*Shapell Industries, Inc. v. Governing Board* (1991) 1 Cal.App.4th 218, 233 [1 Cal.Rptr.2d 818].) Accordingly, to decide the meaning of sections 100301 and 100309, we apply our independent review without reference to the trial court's actions. (*McGill v. Regents of University of California, supra,* 44 Cal.App.4th at p. 1786.)

In exercising our independent judgment, we rely upon settled rules of statutory construction. " 'Statutes are to be interpreted in accordance with their apparent purpose . . . .' (*Kaiser Foundation Health Plan, Inc. v.*

*Lifeguard, Inc.* (1993) 18 Cal.App.4th 1753, 1762 [23 Cal.Rptr.2d 235].) First and foremost, we look for that purpose in the actual language of the statute. (*Mercer v. Department of Motor Vehicles* (1991) 53 Cal.3d 753, 763 [280 Cal.Rptr. 745, 809 P.2d 404].) If the meaning is without ambiguity, doubt, or uncertainty, then the language controls. (*Security Pacific National Bank v. Wozab* (1990) 51 Cal.3d 991, 998 [275 Cal.Rptr. 201, 800 P.2d 557].) If the meaning of the words is not clear, we may refer to various extrinsic aids, including the history of the statute, to determine the intent of the Legislature. (*Kaiser Foundation Health Plan, Inc. v. Lifeguard, Inc., supra,* 18 Cal.App.4th at p. 1762.) Finally, if neither the words of the statute nor its legislative history reveal[s] a clear meaning, we apply reason and practicality, and interpret the statute in accord with common sense and justice, and to avoid an absurd result. (*Halbert's Lumber, Inc. v. Lucky Stores, Inc.* (1992) 6 Cal.App.4th 1233, 1240 [8 Cal.Rptr.2d 298].)" (*In re Marriage of Campbell* (2006) 136 Cal.App.4th 502, 506 [38 Cal.Rptr.3d 908].)

Although our review is independent, we do not necessarily disregard the DIR's interpretation of the law. "Where the meaning and legal effect of a statute is the issue, an agency's interpretation is one among several tools available to the court. Depending on the context, it may be helpful, enlightening, even convincing. It may sometimes be of little worth. (See *Traverso v. People ex rel. Dept. of Transportation* (1996) 46 Cal.App.4th 1197, 1206 [54 Cal.Rptr.2d 434].) Considered alone and apart from the context and circumstances that produce them, agency interpretations are not binding or necessarily even authoritative. To quote the statement of the Law Revision Commission in a recent report, 'The standard for judicial review of agency interpretation of law is the *independent judgment* of the court, giving *deference* to the determination of the agency *appropriate* to the circumstances of the agency action.' (Judicial Review of Agency Action (Feb. 1997) 27 Cal. Law Revision Com. Rep. (1997) p. 81, italics added.)" (*Yamaha Corp. of America v. State Bd. of Equalization* (1998) 19 Cal.4th 1, 7–8 [78 Cal.Rptr.2d 1, 960 P.2d 1031].) It follows that if application of the settled rules of statutory interpretation does not clearly reveal the Legislature's intent, the DIR's interpretation of the statutes in the context of this case may be helpful.

### E.   *Sections 100308 and 100309*

Sections 100308 and 100309 were part of the 1994 reorganizing legislation (Stats. 1994, ch. 254, §§ 27, 28, pp. 1855–1856). Section 100308 describes the employees who would be transferring to VTA and VTA's obligations pertaining to accrued benefits: "County employees and employees of the Santa Clara County Congestion Management Agency who, on a date or dates determined by the board of directors, terminate their employment and immediately thereafter become employees of [VTA], shall transfer to [VTA], and

[VTA] shall assume liability for, all of their accrued and unused vacation, sick leave, personal leave, compensating time off and STO balances and days of accrued service in accordance with the records of their former employer in lieu of any payment by the former employer for those balances. Those employees who were covered by a county or congestion management agency pension plan shall be entitled to the same or equivalent rights, options, privileges, benefits, obligations, accrued service, and status under the pension plan of [VTA]."

Section 100309 consists of the following two paragraphs:

"To the extent permitted by law, and until altered or revoked as provided by law, [VTA] shall grant recognition to those employee organizations which served as the recognized representatives of the former county employees described in Section 100308 immediately prior to their employment by [VTA].

"[VTA] shall assume and observe all applicable provisions, including wages, of existing written memoranda of understanding in effect between the county and the above recognized labor organizations for those former county employees described in Section 100308 who are employed by [VTA] in positions which would have been covered by those memoranda if the employees had remained employed by the county. This obligation extends only for the remainder of the term of the respective existing written memoranda of understanding and to the extent not superseded by a successor agreement between [VTA] and a recognized labor organization."

## F.  *Analysis*

### 1.  Section 100309

The first paragraph of section 100309 required VTA to "grant recognition" to any employee organization that, immediately prior to the 1995 transfer, was the recognized representative of the county employees. As the superior court noted, section 100309 says nothing about the composition of the bargaining units that selected these representatives. That omission does not convince us that the Legislature intended to exclude supervisory and managerial employees from any such unit. To the contrary, in our view, the Legislature intended that VTA accord collective bargaining rights to all the transferring county employees to the extent the employees enjoyed such rights in their prior employment. Our conclusion is based upon the settled principles of statutory interpretation.

The plain language of section 100309 requires VTA to grant recognition to the representatives of the "employees described in Section 100308." The employees described in section 100308 are the county employees transferring to VTA as part of the 1995 reorganization. Section 100308 requires VTA to assume liability for all benefits those employees earned in their prior employment, thereby relieving the county of any obligation to cash out those benefits when the employees were terminated. The provision quite plainly applies to all the transferring employees regardless of their job description. It follows that the reference in section 100309 to the "employees described in Section 100308" is to all the transferring employees.

The historical context of the legislation confirms that the Legislature did not intend to exclude supervisory employees from the scope of section 100309. The Legislature would have been aware that county employees transferring to VTA in 1995 had collective bargaining rights under the MMBA during their employment with the county. (See *People v. McGuire* (1993) 14 Cal.App.4th 687, 694 [18 Cal.Rptr.2d 12] [we assume Legislature was aware of existing law at the time it enacted the statute].) Since the MMBA accords collective bargaining rights to supervisors and managers, the Legislature must have anticipated that there would be organizations of supervisory or managerial employees among those transferring to VTA. Yet the Legislature required VTA to recognize the employees' existing bargaining representatives without expressly limiting the requirement to any particular employment categories.

The unqualified requirement of section 100309 may be contrasted with section 100350, which pertains to the employees of transit facilities acquired by VTA. Section 100350, which was part of the original enabling legislation (Stats. 1969, ch. 180, § 1, pp. 432, 449), provides that whenever VTA acquires existing facilities, the employees of the existing facility shall be appointed to positions with VTA and shall retain all benefits they had with their former employer and that VTA shall "assume and observe all existing labor contracts." The section expressly states, however, that these rights "apply only to those officers or supervisory employees of the acquired utility as shall be designated by the [VTA] board." Had the Legislature intended to limit the rights granted under section 100309 to nonsupervisory employees, it could have expressed that intent as it did in section 100350. (See *California Fed. Savings & Loan Assn. v. City of Los Angeles* (1995) 11 Cal.4th 342, 349 [45 Cal.Rptr.2d 279, 902 P.2d 297] [Legislature knows how to create an exception when it wishes to do so].)

The legislative history of section 100309 further supports the conclusion that the Legislature intended to provide for continuity of collective bargaining rights for all the transferring county employees. An Assembly committee analysis of the legislation explains that the bill would reorganize county transit functions and that county employees then providing transit services "will have the opportunity to transfer employment to the district, *and will retain any rights* and pension benefits they previously had. Labor agreements existing before the reorganization will not be impacted." (Assem. Transp. Com., Analysis of Assem. Bill No. 2442, (1993–1994 Reg. Sess.) Mar. 7, 1994, p. 2, italics added.) The pending bill was also described as requiring VTA "to recognize employee organizations which, prior to the reorganization of the district, represented the county employees of the district." (*Id.* at p. 1.) The implication of this language is that all transferring employees would continue to enjoy the same collective bargaining rights they enjoyed while employed by the county.

That the Legislature was concerned with continuity of collective bargaining rights may also be inferred from the requirements of the Urban Mass Transportation Act of 1964. (Pub.L. No. 88-365 (July 9, 1964), now 49 U.S.C. § 5301 et seq.) This federal law conditions federal funding for transportation projects upon, among other things, continuation of collective bargaining rights of employees affected by the federal assistance. (49 U.S.C. § 5333(b)(2)(B).) A federal funding contingency is certainly one reason the Legislature might have wanted to preserve the collective bargaining rights of all the county employees.

■ The most compelling reason for concluding that section 100309 applies to all transferring county employees and, therefore, requires VTA to recognize the supervisory-administrative bargaining unit as it was composed at the time of transfer, is the absurdity of a contrary conclusion. Section 100309 requires VTA to grant recognition to the recognized representatives of the transferring employees. Selection of the representative always follows determination of the appropriate bargaining unit. (*Pittsburgh Glass Co. v. Board* (1941) 313 U.S. 146, 156 [85 L.Ed. 1251, 61 S.Ct. 908].) Under the LMRA, at the time of initial organization the first task is to identify the employees included in the bargaining unit; then, the bargaining unit decides which organization it wants as an exclusive bargaining representative. This is the only way to give effect to the policy of ensuring that the employees have the right to bargain through representatives of their own choosing. (§ 100301; 29 U.S.C. § 151.) Thus, a requirement that VTA grant recognition to the representative necessarily implies that VTA must accept the bargaining unit represented. If the Act allowed VTA to exclude supervisors and managers

from an existing bargaining unit, the exclusion would alter the composition of the unit that selected the representative in the first place. That would make the requirement of section 100309, that VTA grant recognition to the "recognized representatives of the former county employees," completely meaningless.

■ VTA's construction of the law would also negate the requirement that VTA grant recognition to the recognized representative of the county employees "until altered or revoked as provided by law." (§ 100309.) That is, the statute's recognition requirement persists until the representation is "revoked," which can occur if the unit withdraws its authorization in a decertification election (29 U.S.C. § 159(c)(1)(A)), or until it is "altered." A representation is "altered" when the bargaining unit itself is altered in such a way that the representative no longer validly represents a majority of the employees in the unit. (See §§ 100301, 100302.)[5] Thus, under section 100309, VTA must continue to grant recognition to the recognized representative of the former county employees until the bargaining unit revokes the representation or the bargaining unit is altered in a way that invalidates the representation. This provision would be a nullity if the Act permitted VTA to unilaterally alter the existing bargaining unit on demand by insisting upon the exclusion of supervisors.

■ Accepting the composition of an existing bargaining unit, as we believe the Legislature intended VTA to do, is not inconsistent with federal law. "Often the [NLRB] is faced with the issue of whether established bargaining units remain appropriate when successor employers commence operations. Generally, the [NLRB] has long given substantial weight to prior bargaining history in deciding whether established bargaining units remain appropriate. In most cases, a historical unit will be found appropriate if the predecessor employer recognized it, even if the unit would not be appropriate under [NLRB] standards if it were being organized for the first time." (*Met Elec. Testing Co.* (2000) 331 N.L.R.B. 872, 875–876.)

■ Finally, it is a rule of statutory interpretation that a specific statute shall take precedence over a more general one touching on the same subject. (*Department of Industrial Relations v. Fidelity Roof Co.* (1997) 60 Cal.App.4th 411, 426 [70 Cal.Rptr.2d 465].) Section 100309 pertains only to the county employees who transferred to VTA in 1995 who were organized and represented by a recognized bargaining agent at the time of the transfer. Section 100301 is the general rule that applies when representation questions

---

[5] Requiring VTA to recognize the designated representative until "altered" does not mean that VTA may withdraw its recognition when, as here, the bargaining unit selects a different representative. Such a requirement would, in effect, deprive the employees of the right to choose their own representative. (§ 100301; 29 U.S.C. § 151.)

arise. It follows that section 100309, which is the more specific statute, should take precedence over whatever limitations section 100301 may impose upon the composition of bargaining units generally.

In challenging AFSCME's petition for certification VTA did not challenge the composition of the unit based upon any change in the duties or responsibilities of the employees contained in the supervisory-administrative unit. Rather, VTA attempted to withdraw what it perceived as its voluntary recognition of a unit containing supervisors and managers. This maneuver may be appropriate under federal law, where an employer may never be compelled to bargain with supervisors or managers. (*Newspaper Drivers & Handlers Local 372 v. N.L.R.B.* (1984) 735 F.2d 969, 971.) But VTA's recognition was not voluntary; it was compelled by section 100309.

## 2.  Section 100301

Our interpretation of section 100309 is that the Legislature intended VTA to continue the bargaining rights enjoyed by the transferring county employees regardless of their position in the employment hierarchy. Focus upon section 100301 does not alter our conclusion.

The directive of section 100301 is that the DIR apply *relevant* federal law. The first consideration, therefore, is whether the LMRA is relevant to the question presented. VTA's position is, in effect, that federal law is always relevant to questions of representation at VTA. This is a mistake. The Supreme Court confronted a similar problem involving the Agricultural Labor Relations Board (ALRB). In *Agricultural Labor Relations Bd. v. Superior Court* (1976) 16 Cal.3d 392 [128 Cal.Rptr. 183, 546 P.2d 687], the ALRB had promulgated a rule regulating union access to employer property. Since Labor Code section 1148 required the ALRB to "follow applicable precedents" of federal law, and since the NLRB always resolved accessibility issues on an ad hoc basis, the employer argued that the ALRB had violated Labor Code section 1148 by adopting a rule rather than by making decisions one case at a time. (*Agricultural Labor Relations Bd. v. Superior Court, supra,* 16 Cal.3d at p. 412.) But the Supreme Court observed that Labor Code section 1148 directed the ALRB to be guided by "applicable" precedents of the LMRA. Since the court's only concern was whether the ALRB had reasonably interpreted the legislative mandate, the ALRB "could fairly have inferred that the Legislature intended it to select and follow only those federal precedents which are relevant to the particular problems of labor relations on the California agricultural scene." (*Agricultural Labor Relations Bd. v. Superior Court, supra,* 16 Cal.3d at p. 413.)

■ Section 100301 is similar to Labor Code section 1148 in that it requires the DIR to follow "relevant" federal law and administrative practice. This requirement does not demand slavish adherence to the LMRA. The Act itself provides its own labor relations scheme in section 100300 et seq. Where state and federal labor laws substantially differ, it is error to rely upon federal law to construe the state law requirements. (See *Ramirez v. Yosemite Water Co.* (1999) 20 Cal.4th 785, 798 [85 Cal.Rptr.2d 844, 978 P.2d 2].)

The question before the DIR was whether to exclude supervisors and managers from the supervisory-administrative bargaining unit in light of the requirements of section 100309. Section 100309 imposes obligations upon VTA that are specific to VTA and a one-time legislative reshuffling of public employees between two public employers. The DIR concluded that by imposing these requirements, the Legislature intended to maintain the existing collective bargaining rights of all the employees involved, including supervisors or managers. That is a requirement that does not exist under the federal law. (Indeed, the LMRA does not, by its terms, apply to public employees at all.) Thus, the DIR decided that the LMRA's no-supervisors rule was not relevant to the question at hand.

We recognize that the question presented is a close and complicated one. The DIR, much more than this court, is familiar with the practical considerations of labor relations in public transit districts. It is in these circumstances that we accord the DIR's interpretation significant deference.

### 3.  Assembly Bill No. 199

VTA refers us to the enactment in 2003 of Assembly Bill No. 199 (2003–2004 Reg. Sess.) (Assembly Bill 199) (Stats. 2003, ch. 833, § 1) as support for its position that the Legislature did not intend to extend collective bargaining rights to any supervisors or managers at VTA. Assembly Bill 199 created the Los Angeles County Metropolitan Transportation Authority Transit Employer-Employee Relations Act (§ 99560 et seq.). This act is a comprehensive statute governing employer-employee relations for *supervisory* employees of the Los Angeles County Metropolitan Transportation Authority (LACMTA). (Sen. Rules Com., Analysis of Assem. Bill No. 199 (2003–2004 Reg. Sess.) Aug. 29, 2003.)[6] Prior to enactment of Assembly Bill 199, the law governing labor relations between LACMTA and its employees was identical to the code sections governing labor relations in general at VTA. Indeed, both section 30751, which pertains to LACMTA, and section 100301 provide: "Any question which may arise with respect to whether a majority

---

[6] We have granted, in part, VTA's request that we take judicial notice of the legislative history of section 99560 et seq.

of the employees in an appropriate unit desire to be represented by a labor organization shall be submitted to the [DIR]. In resolving such questions of representation including the determination of the appropriate unit or units, petitions, the conduct of hearings and elections, the director shall apply the relevant federal law and administrative practice developed under the [LMRA (29 U.S.C.A. § 141 et seq.)]."

Assembly Bill 199 is described in the legislative history as establishing a law "to give supervisory employees of [LACMTA] the right to form, join, and participate in the activities of their chosen employee organization for the purposes of representation on all employer-employee relations matters" and to permit "these employees to meet, confer, and enter into Memoranda of Understanding (MOUs) on employer-employee relation matters." (Sen. Rules Com., Analysis of Assem. Bill No. 199 (2003–2004 Reg. Sess.) Sept. 4, 2003.) VTA argues that, in light of this stated purpose, the Legislature must have understood that existing law did not provide these rights to supervisors or it would not have needed the new law and, since existing law applicable to VTA is the same as that applicable to LACMTA, supervisors at VTA have no such rights either. Assuming that VTA's analysis of the law applicable to LACMTA is correct, we note one difference between the two transit acts that is fatal to the analogy: The statutes applicable to LACMTA do not include any provision similar to section 100309. Accordingly, VTA's reliance upon Assembly Bill 199 is inapt.

### G. Conclusion

We hold that section 100309 requires VTA to continue to grant recognition to the recognized representative of the supervisory-administrative unit that transferred to VTA as part of the 1995 reorganization even though the unit includes employees classified as supervisors or managers.

Our holding does not preclude clarification of the appropriate bargaining unit based upon changed circumstances. We merely hold that in light of section 100309, VTA may not demand the exclusion of supervisors or managers from the supervisory-administrative unit solely because, under the LMRA, it would not be compelled to bargain collectively with employees in those categories.

It follows that the DIR did not err in ordering an election among the employees of the supervisory-administrative unit.

## V. Disposition

The judgment of the superior court, granting the petition of the Santa Clara Valley Transportation Authority for a writ of administrative mandate, is reversed. The superior court is directed to enter a new judgment denying the petition.

Bamattre-Manoukian, J., and Duffy, J., concurred.